BIDDIE GEAGLEY, Appellee, v. CITY OF BEDFORD, Appellant.

No. 46571.

November 14, 1944.

Rehearing Denied January 13, 1945.

O. J. Kirketeg, of Bedford, for appellant.

M. R. Brant, of Bedford, for appellee.

Smith, J.—On January 4, 1943, appellee, seventy-three years old and long a resident of defendant city, fell on an icy sidewalk near the hotel operated by her for twenty-five years. She thereby suffered personal injury for which she claims the city is liable in damages.

She alleges that for a period of six weeks preceding the accident the city had allowed snow to accumulate as it fell from time to time; that it failed to remove dirt along the north side of the walk, which stopped the drainage of water therefrom; and that a process of thawing and melting took place causing ice to form at that point and to become uneven, with bumps and ridges, and very dangerous to walk on.

She alleges both actual and constructive notice to the city of such dangerous condition and that she fell and suffered the injury complained of without negligence on her part. Appellant's answer was in effect a general denial. Other preliminary proceedings will be referred to as we discuss the various errors assigned and argued.

The hotel operated by appellee is on the south side of Jefferson Street in said city, with an alley running north and south along the east side intersecting said street at the northeast corner of the hotel premises. The sidewalk extending from Court Street to the east, thence west along the south side of Jefferson Street, crosses this alley near the hotel. Appellee and her witness say the accident happened five or six feet *east* of the alley. Witnesses for appellant testify it was *west* of the alley and alongside or on appellee's premises.

Appellee and her witnesses testify that the snow and ice

had collected there during six weeks preceding the accident, that "it melted and run down and kept freezing," that it was "humpy, rough," "rough and uneven," "it was tracked down there, melting and tracked down and formed ice and kept getting thicker all the time, and rougher."

But this testimony was by no means uncontradicted. A formidable array of witnesses denied it with varying degrees of definiteness. Clearly, the condition of the walk was a question of fact.

Appellee testifies she was entirely familiar with the condition of the walk at that point, that she crossed it numerous times each day, though she did not know it was so rough until she fell on it. She says she was "walking very careful * * * I took rather short steps"; she says she slid on "this humped up heavy ice." The evidence shows there is no other direct route from appellee's hotel to the business section of town.

The witnesses on both sides are quite in agreement that there had been a sleet storm the day before and it was more or less slippery in other places in town.

Other matters in the record and further details of the evidence will be developed as we take up the contentions urged by appellant.

█ I. On March 30th an entry was made in the trial court's calendar that both parties, "in open court waive right to trial by Jury and consent this cause be tried to the Court." Later the calendar shows: "Above record expunged by the Court this 1st day of April, 1943, on its own motion. Defendant excepts."

The record itself makes no explanation of these entries. The respective attorneys in their briefs disagree somewhat as to the facts. The effect of the action of the trial court was to allow a jury trial and no abuse of discretion is shown. We think there was no error.

█ II. Appellant city, before answering, filed a motion asking that appellee be required to bring in "the owner of the property whose duty it is to maintain the sidewalk on which the alleged injury was sustained." The motion alleged that "said petition shows that if there was any negligence in the maintenance of this sidewalk, the owner of the property was guilty" and would be liable over for any judgment appellee

might recover. Appellant assigns as error the denial of this motion. It cites sections 10972 and 10981, Code, 1939, in support of this assignment.

Section 10972 is on its face permissive:

"Any person *may be made a defendant* who has or claims an interest * * * or who is a necessary party to a complete determination or settlement of the question involved in the action * * *." (Italics ours.)

Section 10981 is in part permissive and in part mandatory:

"The Court *may* determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; *but when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, it must order them to be brought in.*" (Italics ours.)

This mandatory provision cannot be held to apply here. The property owner is in no sense a necessary party to this controversy. The liability of appellant city to appellee can be determined without reference to any possible liability over of the adjacent property owner to the city or liability to appellee. We make no pronouncement as to the status of the property owner.

In Searles v. Northwestern Mut. L. Ins. Co., 148 Iowa 65, 68, 69, 126 N. W. 801, 803, 29 L. R. A., N. S., 405, we said:

"The rule as to necessary parties, requiring that all parties whose interests are involved in the matters to be adjudicated must be brought in, has application only in proceedings in equity where the plaintiff is asking some relief to which he is not entitled, unless he can make the decree binding on those who are to be necessarily affected by it."

We do not understand appellant to contend that appellee's right of recovery against the city depends upon her ability to establish liability against the lot owner.

In Updegraff v. City of Ottumwa, 210 Iowa 382, 384, 226 N. W. 928, 929, we say that while section 5945, Code, 1927 (same as in Code, 1939), imposes upon the municipality the duty of maintaining streets and sidewalks in a reasonably safe condition,

it does not "relieve property owners or others from the duty not to obstruct or place dangerous instrumentalities thereon, so as to endanger the safety of the public rightfully using the same, nor from liability for damage occasioned thereby."

That was a "downspout" case. The city and property owner were both named as defendants but there is no suggestion that the latter was a necessary party to recovery against the city.

Our conclusion, without expressing any opinion as to his liability or nonliability, is that the property owner was not a necessary party.

III. Appellant assigns error upon the action of the trial court in sending the jury to view the premises at the conclusion of appellee's evidence in chief. Objection was made "to them viewing the premises at this time." Counsel for appellant added to the objection: "That the evidence, if later on the defendant introduces evidence, that at that time they ought to see the premises."

The jury did again view the premises at the close of all the evidence and without objection. We are unable to see any error, prejudicial or otherwise. No authority is cited by appellant. The court is vested with discretion in the matter (section 11496, Code of 1939) and we are not prepared to hold it abused it.

IV. It is contended the court should have directed a verdict for appellant. Various grounds or reasons are urged and separately argued. We can dispose of all under two divisions.

First, appellant claims there was no evidence of any negligence of appellant causing the injury complained of. The theory of appellant is that whatever icy condition existed was due to a general sleet storm which raged for a day or two before the accident, and not to an accumulation of snow and ice over a long period of time.

It is not necessary to review at length the testimony of various witnesses. The evidence is in sharp conflict both as to the condition of the walk and as to the length of time during which the condition developed. Even the location of the accident is in dispute.

We have already summarized the evidence produced on behalf of appellee. If she and her witnesses are to be believed, there was an accumulation of ice and snow on the walk over a

period of six weeks; there had been thawing and freezing; the situation had been aggravated by the fact that the earth of the parking along the outer edge of the walk, being higher than the walk, obstructed drainage so that melted snow and ice could not escape; the surface had become humpy, rough, and uneven.

While this testimony was contradicted by numerous witnesses, it was for the jury to weigh all the evidence and determine the fact.

We have held that such conditions, existing over a period of time, constitute evidence of negligence for which the municipality is liable. Crandall v. City of Dubuque, 136 Iowa 663, 112 N. W. 555; Collins v. City of Council Bluffs, 32 Iowa 324, 7 Am. Rep. 200; Templin v. Incorporated City of Boone, 127 Iowa 91, 102 N. W. 789; Rose v. City of Fort Dodge, 180 Iowa 331, 155 N. W. 170. It is our opinion this case is ruled by these decisions.

There was ample evidence to go to the jury on the question of notice to the city of the dangerous condition. Several witnesses say the situation developed over a period of six weeks. We have no hesitation in holding this sufficient, if believed, to charge the city with notice.

It is true the evidence shows there had been a recent sleet storm which created slippery conditions over the city generally. Appellee herself says she put ashes on her own walk that morning. But she also testifies she did not slide ''on the common ice, the sleet, but when I struck the heavy rough ice, that is when I started sliding. * * * It was just this humped up heavy ice.''

Appellant argues that appellee's injury was due to an ''act of God'' because of the sleet storm, and that there was nothing the city could have done to avert the accident. It is, of course, probable the fresh sleet aggravated the condition. But that does not avail the appellant here. In a case where a somewhat similar claim was made by the defendant city, we said:

''If this icy projection existed before the storm and freezing weather of the 16th and 17th, then the fact that it was covered with a fresh coating of ice thereby will not tend to relieve de-

fendant from liability.'' Hodges v. City of Waterloo, 109 Iowa 444, 447, 80 N. W. 523, 524.

See, also, Langhammer v. City of Manchester, 99 Iowa 295, 68 N. W. 688; Salzer v. City of Milwaukee, 97 Wis. 471, 73 N. W. 20; Ford v. City of Des Moines, 106 Iowa 94, 75 N. W. 630.

█ V. Appellant also urges, in support of its motion to direct, that ''plaintiff failed to prove freedom from contributory negligence.'' It cites various Iowa decisions in some of which defendant's right to directed verdict was upheld and in others the question was held to be for the jury. Both lists could be materially extended.

It is obvious that each case must depend upon its own facts. It is argued that the decision must turn upon whether it is shown that the appellee *believed* the dangerous walk could be crossed in safety and that she testified to no such belief.

It seems clear from all the cases we have examined, including those cited by appellant, that mere knowledge of the danger, before attempting to pass over it, is not conclusive evidence of contributory negligence:

''She may have known that the way was icy and slippery; yet, if she reasonably believed that, by using care, she could make the passage in safety, she was not negligent.'' Travers v. City of Emmetsburg, 190 Iowa 717, 719, 180 N. W. 753, 754.

See, also, Tillotson v. City of Davenport, 232 Iowa 44, 4 N. W. 2d 365.

The test seems to be whether a plaintiff, knowing of the dangerous condition, believes and has a right as a reasonably prudent person to believe that by the exercise of ordinary care the dangerous place may be passed in safety. Nichols v. Incorporated Town of Laurens, 96 Iowa 388, 65 N. W. 335; Graham v. Town of Oxford, 105 Iowa 705, 75 N. W. 473.

The cases in which plaintiff was held as a matter of law guilty of contributory negligence recognize the rule as above stated, but find that he had not, in the particular case, shown that he exercised care in attempting to cross. Marshall v. City of Belle Plaine, 106 Iowa 508, 76 N. W. 797. Lundy v. City of Ames, 202 Iowa 100, 209 N. W. 427; Mardis v. City of Indianola,

229 Iowa 176, 294 N. W. 279; and Cratty v. City of Oskaloosa, 191 Iowa 282, 182 N. W. 208, cited by appellant, belong in this class of cases. In Gibson v. City of Denison, 153 Iowa 320, 133 N. W. 712, 38 L. R. A., N. S., 644, the court uses some language slightly at variance with the stated rule but some weight is attached to the fact that plaintiff knew of the extremely dangerous situation and nevertheless attempted to cross it though he might have proceeded by another equally convenient route. His own testimony was held to show that it was imprudent for him to attempt to cross.

We have carefully examined and briefly referred to all the cases cited by appellant. We have also carefully studied the testimony of appellee as bearing on her conduct in attempting to use the walk. That she was generally familiar with the walk is unquestioned, but the condition that day was worse because of the sleet storm the preceding day. She says:

"I was walking very careful * * * I took rather short steps. Q. Did you know the walk was dangerous * * *? A. No. I didn't know it was dangerous. Q. But why did you take those steps to be careful? A. I thought I would get over it better to take short steps."

On cross-examination she says:

"Q. Did you see this rough ice there? A. I didn't know it was so rough. I seen it, but I couldn't get off nowhere else. I had to go. Q. You had to go across it anyway, but you did see it? A. I seen it, I knew it was there. Q. You knew it was rough? A. I didn't know it was so rough until I fell on it. Q. Could you see it was uneven? A. I hadn't noticed that at all. Q. But you knew it was bad? A. I knew it was bad, heavy ice there."

It is not necessary to go into greater detail. A proper inference from her testimony is that she believed she could, by exercising care, safely use the walk. We think there was sufficient evidence of freedom from contributory negligence to justify submission to the jury.

Some of the witnesses testified that the accident occurred

west of the alley and in front of appellee's own premises. Others denied this. The question was for the jury.

VI. Complaint is made of the court's refusal to submit to the jury two requested interrogatories and an instruction. One interrogatory was given and answered to the effect that the accident occurred *east* of the alley. Another requested interrogatory as to whether it occurred *west* of the alley was refused. It was, under the record, the same question in reverse. The ultimate fact was presented in the first. It was not necessary to submit both. Nor was there reversible error in refusing the interrogatory which inquired as to whether appellee or anyone else, during the six weeks preceding the date of appellee's accident, notified appellant city of the dangerous condition of the walk. In answer to another interrogatory the jury found that the city had means of knowledge or information sufficient to charge it with notice.

The subject matter of the requested instruction, so far as proper, was embodied in the instructions given. It was not necessary to caution the jury that the city is not an insurer where it is made clear to the jury that any recovery must be based on negligence.

We find no reversible error in these rulings.

VII. No motion to dismiss the appeal was made by appellee. But during the oral argument some question arose as to the "amount in controversy," under Rule 333 of the Rules of Civil Procedure. As it concerns our jurisdiction to entertain the appeal it is proper, if not necessary, that we decide it.

The petition prayed for judgment in the sum of $3,500. There was no certificate by the trial judge. Appellee at no time amended her petition to reduce her claim below the $300 minimum established by the rule.

The rule provides, as did the statute it supersedes (section 12833, Code, 1939), that the "amount in controversy, *as shown by the pleadings*" controls. The decisions under the statute are in point under the rule. We consistently held under the statute that the fact plaintiff recovered less than the statutory minimum would not preclude an appeal without certificate, so long as the *pleadings* showed an amount in controversy exceeding such minimum. Fullerton v. Cedar Rapids & M. C. Ry. Co.,

101 Iowa 156, 70 N. W. 106; Davis v. Laughlin, 147 Iowa 478, 124 N. W. 876; Wald v. Wald, 124 Iowa 183, 99 N. W. 720; Hancock v. Hancock, 134 Iowa 475, 109 N. W. 1009. The rule is, of course, subject to the same interpretation and it follows the appeal was properly taken without a certificate by the trial judge.

Finding no reversible error in the record, the judgment is affirmed.—Affirmed.

All JUSTICES concur.