ALICE SMITH, appellant, v. J. C. PENNEY COMPANY et al.,
appellees.

No. 52328.

(Reported in 149 N.W.2d 794)

APRIL 4, 1967.

Mahoney, Jordan & Smith, of Boone, for appellant.

Cudahy & Wilcox, of Jefferson, for appellee J. C. Penney Company.

Edward S. White, of Carroll, for appellee R. H. Maloney and R. H. Maloney as executor of estate of Florence M. Maloney, deceased.

GARFIELD, C. J.—Alice Smith brought this law action to recover for personal injuries from falling on ice near the rear entrance to a store building in Jefferson leased to defendant J. C. Penney Company by the owner, defendant Maloney, individually and as executor of his deceased wife's estate. Trial resulted in jury verdicts against Penney and in favor of Maloney. On Penney's motion the trial court entered judgment against plaintiff notwithstanding the verdict in her favor. Plaintiff has appealed.

I. In considering the propriety of the ruling appealed from we will view the evidence in the light most favorable to plaintiff.
■ Generally questions of negligence, contributory negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. Authorities need not be cited for these propositions.

II. The store building faced north on the northeast corner of the block in the business district of Jefferson. There was a sidewalk along the east side of the building and an east-west alley along its south end. Thirty-two feet west of the sidewalk was the rear entrance to the store which, with the alley, was customarily used by most of the employees, many deliverymen and some customers. The manager and assistant manager of the store were fully aware of this custom. The former testified he knew there was quite a little traffic coming in the door. A single concrete step protruded into the alley a foot or more just beneath the entrance door.

Plaintiff, then age 47, had been employed by Penneys as a saleslady about 12½ years prior to the morning of January 28 1963, when she walked south on the sidewalk to the alley and then turned west toward the rear entrance. Mrs. Richmond,

another employee, preceded plaintiff. They "picked their way" carefully toward the step. The alley was very slick with ice and packed snow. Mrs. Richmond reached the step. As plaintiff was ready to step onto it she fell on ice, broke her ankle in three places and dislocated the joint.

Plaintiff's feet were within two or three feet of the step and a like distance from the south wall of the building. There were two tracks made by trucks in the packed snow and ice in the alley. There is evidence plaintiff's feet when she fell were north of the north track.

The front entrance to the store was ordinarily not unlocked until 9 when plaintiff was usually in the store ready to wait on customers. Her fall occurred about 8:50.

There is evidence the ice near the back step did not result from natural conditions but from snow that melted and dripped from four awnings over the rear windows and from the roof or eavetroughs. Some of the ice may have formed from water from nearby buildings. Plaintiff testified that on January 28 and the days just preceding it icicles were hanging from the awnings and they would drip on the warmer days. It had been warmer, with thawing, a few days earlier. Temperature was 30 degrees on January 22.

A partner in an auto body shop across the street from the rear of the Penney store went to plaintiff's aid as soon as she fell. Asked whether he made observations as to where the water came from that formed the ice where plaintiff fell, he testified, "It could have come from anywhere but it looked to me like it would have to come from the Penney store because it was right by the step." The witness pointed out that water from other buildings would probably go down the center of the alley which was lower, rather than toward the side where plaintiff fell.

A woman employed at Penneys at the time of the accident said she observed the alley that morning was real slick, very icy. "Whenever there was snow on the building there was ice up around the door and step." There is much testimony that in an earlier winter so much ice and snow accumulated on an awning it was pulled away from the building and Mr. Maloney had to replace it.

The manager of the store testified he had "scooped" snow from around the step and the step itself, although he did not consider it his responsibility to do so, and had removed ice from the awnings. The assistant manager said he tried to clear the snow off "around there" every time it snowed. He did not recall how long prior to January 28 he had done so. He did recall that at times there were ice and icicles on the awnings from which water dripped.

About 20 years earlier, before he leased the building to Penney, defendant Maloney installed eavetroughs which drained through a downspout into a storm sewer at the southwest corner of the building. Since then he had observed ice and snow accumulations on the roof and awnings and icicles hanging on the awnings. He recalled the time prior to January 28, 1963, when ice and snow on an awning pulled it away from the building and it had to be replaced. "In extremely cold weather the system freezes up." Minimum temperatures were below zero for several days before the 28th. There is evidence the eavetroughs and downspout did not drain all the water formed from the snow on the roof.

No sand, salt or other abrasive material had been placed on the area near the step.

 III. The court, erroneously as we believe, sustained objections as incompetent, irrelevant and immaterial to plaintiff's offer of evidence that a prior Penney manager had instructed employees to use the back door in coming to work mornings; plaintiff had no keys to the front door; and another woman employee slipped and fell on the ice in the alley at the rear of the store two days before plaintiff fell.

The rule is well settled in Iowa, at least commencing with Lindquist v. Des Moines Union Railway Co., 239 Iowa 356, 367–369, 30 N.W.2d 120, 126, that evidence of former accidents at a place is admissible to show its dangerous character and knowledge thereof if conditions are substantially similar or comparable and they are not too remote. Christianson v. Kramer, 257 Iowa 974, 977, 978, 135 N.W.2d 644, 646, 647, and citations. We think the offered evidence here meets this test. There is evidence of sufficient similarity of conditions.

In passing on the sufficiency of the evidence we have considered that offered by plaintiff and improperly excluded by the court. Iowa Electric Co. v. Home Insurance Co., 235 Iowa 672, 676, 677, 17 N.W.2d 414, 416, and citations; Brown v. Schmitz, 237 Iowa 418, 424, 22 N.W.2d 340, 343; Sjulin v. Clifton Furniture Co., 241 Iowa 761, 768, 41 N.W.2d 721, 726; Ferris v. Employers Mutual Cas. Co., 255 Iowa 511, 522, 122 N.W.2d 263, 269, 270.

IV. The court submitted to the jury two of many pleaded grounds of negligence as against defendant Penney: (1) Failing to provide reasonably safe premises and approaches thereto for persons such as plaintiff, and (2) failing to use reasonable care to remove ice from the approach to the rear door or to put sand, ashes or some substance on it to make it safe to walk over.

A single ground of negligence was submitted as against defendant Maloney: Failing to maintain the leased premises and approaches thereto in a safe and suitable condition.

In entering judgment for Penney notwithstanding the verdict against it the court ruled no actionable negligence was shown since plaintiff had as much knowledge of the icy condition of the alley as Penney did, citing Atherton v. Hoenig's Grocery, 249 Iowa 50, 54, 86 N.W.2d 252, 255, which was evidently thought to be controlling. We first consider whether, as plaintiff asserts, this ruling was error.

V. Cities and towns have the care, supervision and control of all public streets and alleys and the duty to keep them open and free from nuisances. Section 389.12, Codes 1962 and 1966. The duty thus imposed does not, however, relieve property owners or others from the duty not to obstruct them so as to endanger the safety of the public rightfully using them nor from liability for damage occasioned thereby. This rule has been applied in many cases under a great variety of facts. It is elementary that the owner or occupant of a building abutting a public way may not lawfully collect water accumulating from rain or snow upon the roof and by some artificial means discharge it upon the street or sidewalk, where it freezes and forms ice. Nor may he negligently permit the water to escape

from a defective downspout or other agency and accumulate upon the sidewalk and cause injury to others. Updegraff v. City of Ottumwa, 210 Iowa 382, 384, 226 N.W. 928, 929, citing numerous authorities.

The owner or occupant of premises abutting a public way is under no obligation to keep the sidewalk free from snow or ice which came there from natural causes. However, where he maintains his premises in such a manner that ice forms on the adjacent walk as the result of artificial rather than natural causes, liability to one falling thereon may result. Mutzel v. Northwestern Bell Telephone Co., 247 Iowa 14, 18, 72 N.W.2d 487, 489, and citations.

Beyer v. City of Dubuque (1966), 258 Iowa 476, 139 N.W.2d 428, 430–432, is much like the present case except there plaintiff fell on an icy sidewalk, rather than an alley, near a downspout from roof gutters which were inadequate or defective, causing water to drip or leak onto the walk. This water, together with water from natural sources, formed ice on which plaintiff fell. We held the evidence presented a jury issue as to liability of the owner of the building as well as the city. The basic rule applied in the Beyer case is the one we have set out from Updegraff v. City of Ottumwa, supra.

Disregarding for the moment terms of the lease from Maloney to Penney, the facts Penney was tenant rather than owner and plaintiff knew of the icy condition of the alley, it is our opinion the evidence, in the light most favorable to plaintiff, raised a jury question as to Penney's liability to plaintiff under the rule stated in Updegraff v. City of Ottumwa and many other precedents, including Beyer v. City of Dubuque, both supra.

We consider now the matters above referred to which Penney urges in support of the ruling appealed from.

VI. We are told Penney leased and occupied only part of the building in question. No such issue was raised in the trial court and Penney is therefore not entitled to raise it here. In re Estate of Lundgren, 250 Iowa 1233, 1239, 98 N.W.2d 839, 843, and citations; Wilson v. City of Council Bluffs, 253 Iowa 162, 167, 110 N.W.2d 569, 572.

Plaintiff's petition alleges Maloney owned the premises described as the east $\frac{2}{3}$ of a certain lot and block in Jefferson and that a building 44 feet wide and 132 feet deep described with particularity was located thereon which Penney leased from Maloney and used as a store. Defendant's answer admits these allegations. Plaintiff asserts in her reply brief that Penney also leased and occupied the first floor and basement under a building two stories high just west of the one-story building in controversy and no claim is made of any defect in the west building. The fact that Penney did not occupy the second floor of the west building does not aid it here.

VII. The lease from Maloney to Penney provides "Tenant shall keep sidewalks adjoining the demised premises clear of ice and snow.

"REPAIRS. That the Landlord shall be responsible for and keep all parts of the demised premises * * * and the building of which the demised premises may be a part * * * in good, safe, tenantable condition, sightly in appearance, and in good order and repair. Landlord shall be liable for any damages sustained by Tenant resulting from the failure of Landlord to make any of said repairs, and Landlord hereby agrees to hold the Tenant harmless against all claims * * * for damages, arising out of * * * injury to * * * persons or property * * * resulting from the failure of Landlord to make any of said repairs after having been notified by Tenant of the need of said repairs."

There is no evidence Maloney was ever notified of the need for repairs. We are not concerned with the liability of Penney and Maloney, as between themselves, for injuries to third persons. The foregoing provision of the lease does not relieve Penney from its duty to persons such as plaintiff to maintain the premises in a reasonably safe condition. The rules applicable to the liability of Penney are stated in section 364(c), Restatement, Second, Torts, and Comment b, section 378.

Section 364 provides: "Creation or Maintenance of Dangerous Artificial Conditions.

"A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other

artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if

"(a) the possessor has created the condition, or

"(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or

"(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

Applicability of section 364(c) is made clear by Comment b to section 378:

"b. The fact that the lessor has contracted to repair the land, or to keep it in a safe condition, does not relieve the tenant from his duty to persons outside of the land to maintain it in safe condition. A person outside of the land injured by an unreasonably dangerous condition which the performance of the lessor's contract would have made safe may recover against either the lessor or the lessee."

Substantially the rules just quoted are also stated in annotation 88 A. L. R.2d 331, 416: "The tenant of property abutting on a sidewalk has been held liable for an injury sustained on the sidewalk where it was caused by a defective condition created by his landlord, and the tenant, knowing the condition, failed to take proper precautions to remedy it."

The footnote to this adds: "The courts in many other cases, although not expressly treating the issue of tenant's liability for a condition created by his landlord, have by necessary implication recognized the rule stated above, where they have held the tenant liable under such circumstances."

Scott v. Village of Olivia, 260 Minn. 346, 110 N.W.2d 21; Bixby v. Thurber, 80 N. H. 411, 118 A. 99, 29 A. L. R. 175; Krug v. Wanner, 28 N. J. 174, 145 A.2d 612; Johnson v. Prange-Geussenhainer Co., 240 Wis. 363, 2 N.W.2d 723, 727–729, are among decisions which support the views above expressed.

In the Scott case, supra, the lessors retained an apartment in the leased building. The opinion rejects contentions similar to those advanced by Penney here,

Bixby v. Thurber, supra, points out that as to persons using the adjacent street the lessee is to be treated as the abutting owner. To like effect is Prosser on Torts, Third Ed., section 63, pages 411, 412.

Krug v. Wanner, supra, states: "While the leasing arrangement between the landlord and tenant could fix their respective duties of repair as between themselves, it could not relieve the tenant of his duty of exercising due care to prevent the cellar doors from becoming hazardous." The opinion goes on to quote with approval: "no provision of a lease can absolve a tenant as against a third person from the tenant's duty to maintain a sidewalk in front of the demised premises in a reasonably safe condition" (page 183 of 28 N. J., pages 616, 617 of 145 A.2d).

Johnson v. Prange-Geussenhainer Co., supra, says: "Plaintiff has a right of recovery against both landlord and tenant for, as between her and them, each bore the duty to repair" (page 373 of 240 Wis., page 727 of 2 N.W.2d).

See also Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 675, 676, 26 N.W.2d 429, 444, and citations; Stupka v. Scheidel, 244 Iowa 442, 452–455, 56 N.W.2d 874, 880, 881, and citations.

VIII. The above authorities and most of the others consider a hazardous condition in a street or sidewalk resulting from an artificially created cause on the abutting premises. Here the hazardous condition was in the abutting public alley. It is probably true that ordinarily alleys are not designed for pedestrian use. But this one at the place where plaintiff fell was widely used by pedestrian employees, deliverymen and some customers with Penney's admitted knowledge and clearly implied consent. In fact, as we have pointed out, the jury could have found from evidence properly offered that employees were directed to use the alley in reporting for work mornings. No other means of access to the premises was available to plaintiff at that time.

It seems to us Penney owed plaintiff the duty to exercise ordinary care to make the approach to the rear entrance reasonably safe for the use she had been directed to make of it, just as it owed pedestrians using the abutting sidewalk a like duty.

Under the circumstances here as applied to this duty there is no distinction between the public alley and a public street or sidewalk. Burkhard v. Bowen, 32 Wash.2d 613, 203 P.2d 361, 364. What is said in Engman v. City of Des Moines, 255 Iowa 1039, 1041–1045, 125 N.W.2d 235, 236–238, and citations, furnishes some support for this view.

IX. As before indicated, the trial court ruled no actionable negligence of Penney toward plaintiff was shown since she had as much knowledge as Penney of the icy condition of the alley, citing Atherton v. Hoenig's Grocery, supra, 249 Iowa 50, 54, 55, 86 N.W.2d 252, 254, 255. The cited case and those that follow it hold a possessor of real estate owes a duty only to those invitees who do not know or, in the exercise of reasonable care, have no reasonable means of knowing, of defects or dangers.

As we have just pointed out, we think Penney's duty toward plaintiff with reference to the approach to the rear entrance is comparable to its duty toward a pedestrian using the adjacent sidewalk. Its duty toward both was to exercise ordinary care. We have not ordinarily applied the rule of the Atherton case to cases where a pedestrian falls on an icy sidewalk. See, e.g., Beyer v. City of Dubuque, supra, 258 Iowa 476, 481, 139 N.W.2d 428, 431, 432, and citations.

We have also held the extent of the invitation and care required of an owner of real estate toward a tenant are not satisfied by a showing the latter knew or should have known of a defect at the time of his injury therefrom. Bostian v. Jewell, 254 Iowa 1289, 1296, 121 N.W.2d 141, 145. See Lindstrom v. Mason City, 256 Iowa 83, 87, 126 N.W.2d 292, 294.

The business-invitee rule announced in the Atherton case is somewhat qualified in Hanson v. Town & Country Shopping Center, Inc., 259 Iowa 542, 546–552, 144 N.W.2d 870, 873–876, and Meader v. Paetz Grocery Co., 259 Iowa 1101, 147 N.W.2d 211, 215.

In the former, Mrs. Hanson was injured in a fall on rough, jagged and slick ice formed from snow pushed from a sidewalk adjoining defendant's parking lot. A verdict was directed for defendant on the ground it was not liable for injuries from

dangers which are obvious, reasonably apparent or as well known to the person injured as to the owner. We reversed the judgment after pointing out the rule so applied was based in part upon Restatement, Torts, section 343, which was later changed in Restatement, Second, Torts. The later Restatement also adds section 343A which provides:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness * * *"* (emphasis added).

The Hanson opinion also points out that Comment (b) under new section 343A states:

"(b) The word 'known' denotes not only knowledge of the existence of the condition * * *, *but also appreciation of the danger it involves.* Thus the condition * * * must not only be known to exist, but it must also be recognized * * * by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence and judgment" (emphasis also added).

Our holding in the Hanson case (on page 547) is:

"Defects in premises which are in no sense hidden and could only be classified objectively as open and obvious may be of such nature that the possessor should know the invitee would not anticipate or guard against them in using the premises within the scope of the invitation. * * *

"We believe there was sufficient evidence to make a jury question as to whether defendant had breached its duty to plaintiff."

In Meader v. Paetz Grocery Co., supra, 259 Iowa 1101, 147 N.W.2d 211, 214–216, plaintiff tripped over a box of canned peaches in an aisle from which a stock boy was replenishing the supply on the shelves. Although we held there was no liability under the particular facts, the opinion in Hanson v. Town & Country Shopping Center, Inc., is fully analyzed much as we have done here and section 343A, Restatement, Second, Torts, supra, and what we have said is the holding of the Hanson opinion are quoted with apparent approval. All sitting Justices con-

curred in the Meader opinion. The facts of the present case resemble those in Hanson much more than those in Meader.

We think a jury question was presented here as to the negligence of Penney toward plaintiff.

It is only fair to the trial court to observe that he did not have the benefit of our Hanson and Meader opinions when the action was tried or finally disposed of.

X. The trial court ruled plaintiff failed to establish her freedom from contributory negligence and was guilty of such negligence as a matter of law. We treat this only briefly, since we do not understand Penney seeks to uphold the judgment on this ground.

The issue of freedom from contributory negligence is closely related to that of defendant's primary negligence and depends upon the same reasoning. Warner v. Hansen, 251 Iowa 685, 695, 102 N.W. 2d 140, 146; Lattner v. Immaculate Conception Church, 255 Iowa 120, 128, 121 N.W.2d 639, 644; Bartels v. Cair-Dem, Inc., 255 Iowa 834, 846, 124 N.W.2d 514, 521.

Geagley v. City of Bedford, 235 Iowa 555, 561, 16 N.W.2d 252, 256, carefully considers the issue of freedom from contributory negligence where plaintiff fell on an icy sidewalk near a hotel operated by her and holds:

"It seems clear from all the cases we have examined, including those cited by appellant [defendant], that mere knowledge of the danger, before attempting to pass over it, is not conclusive evidence of contributory negligence * * * .

"The test seems to be whether a plaintiff, knowing of the dangerous condition, believes and has a right as a reasonably prudent person to believe that by the exercise of ordinary care the dangerous place may be passed in safety" (citations).

Alber v. City of Dubuque, 251 Iowa 354, 357–361, 101 N.W.2d 185, 187–189, 81 A. L. R.2d 699, cites and discusses many other precedents to like effect under varying facts. See also Atherton v. Hoenig's Grocery, supra, 249 Iowa 50, 55, 86 N.W.2d 252, 255.

Applying the test above stated, the question of freedom from contributory negligence was for the jury.

XI. We have considered the main grounds on which the motion for judgment notwithstanding verdict was sustained. We think the ruling was erroneous.

XII. Penney filed a motion for new trial as well as the motion, previously considered, for judgment. After sustaining the motion for judgment and dismissing plaintiff's case at her costs, the court proceeded to sustain the motion for new trial. This last ruling was in violation of rule 248, Rules of Civil Procedure, and a nullity. The court was without jurisdiction to entertain the motion for new trial after sustaining the motion for judgment. Slack v. Nease, 255 Iowa 958, 964, 124 N.W.2d 538, 542; Mazur v. Grantham, 255 Iowa 1292, 1299, 1300, 125 N.W.2d 807, 811, 812. See also Giarratano v. Weitz Co., 259 Iowa 1292, 147 N.W.2d 824, 836.

Rule 243, R. C. P., sets forth the grounds for judgment notwithstanding an adverse verdict. Rule 244 sets forth grounds for a new trial. Rule 248 provides a motion may be filed under either 243 or 244 without waiving the right to file or rely on the other of such motions. Rule 248 also states:

"* * * If the motion under rule 243 [for judgment notwithstanding verdict] is sustained, the sustaining thereof shall be deemed a denial of the motion under rule 244 [for a new trial]. Upon an appeal by any party from an order sustaining a motion under rule 243 the supreme court may, if the matter is argued, also review such denial of the motion under rule 244 without the necessity of an appeal therefrom."

About 4½ pages of Penney's brief and argument are devoted to the claimed errors asserted in the motion for new trial. We will consider such of these as are not disposed of by the views we have already expressed. In doing so, the trial court's ruling on the motion for new trial will be deemed of no force or effect. Mazur v. Grantham, supra, 255 Iowa, at 1300, 125 N.W.2d, at 812.

XIII. Defendant Penney is not entitled to have claimed errors in jury instructions 1 and 28 considered since no objection to these instructions was made on the trial within the time required by rule 196, R. C. P. Wagaman v. Ryan, 258 Iowa 1352, 1358, 142 N.W.2d 413, 417, and citations.

XIV. Instruction 21 requires the jury to find whether plaintiff was about to enter the building for the purpose of going to her place of employment or as a mere trespasser or intruder. This was not a controverted issue upon the trial. The instruction was not prejudicial to defendant-appellee but was favorable to it.

XV. Penney argues instruction 12½ places upon it an absolute liability contrary to law; the charges of negligence against Penney (set out in Division IV, supra) to which instruction 2 refers impose upon it a standard of care the law does not recognize; Penney was under no duty to provide a reasonably safe approach to its store, nor to exercise reasonable care in this respect as instruction 22 requires, since the approach was in a public alley over which it asserts it had no control; instruction 22 makes Penney an insurer of the safety of the alley toward plaintiff. Penney's duty extended only to the premises and not to the alley, contrary to what it is said instruction 24 requires.

We have read these four instructions and the others set out in the record many times. Although the four are not to be commended as models, we are not persuaded any of them entitle Penney to a new trial upon the grounds asserted at the trial and argued here.

Certainly instruction 12½ does not place upon Penney an absolute liability, contrary to law. This is the extent of defendant's argument on this claimed error. The instruction states the alley is under the exclusive control of the city; neither defendant had any duty to remove ice or accumulations from natural causes such as snow or sleet or which may have come from other buildings (this is stated twice); before there would be liability, the accumulations of ice where plaintiff fell must have come from the Maloney building and found their way to the place where she fell and have been the proximate cause of her injury.

The rule stated in instruction 12½ is substantially that expressed in our Division V, supra. The duty imposed on Penney by instruction 12½ was further qualified by instruction 22 which states Penney could only be under the duty to exercise reason-

able care to provide a reasonably safe approach to its rear entrance and to see that the overflow or drippage from the building, resulting in ice, was not permitted to accumulate or remain upon the approach if it could have been avoided by the exercise of reasonable care.

Instruction 22 states twice that the mere presence of ice or rough compressed snow upon the approaches to the rear entrance to the building in itself is not proof of negligence. Instruction 24 repeats this. Instruction 20 sets out the familiar propositions plaintiff—and any plaintiff in a negligence action—must prove in order to recover. The portion of the instruction objected to refers to the two charges of negligence against Penney which were submitted to the jury. We do not find this was error in the respect argued.

Instruction 23, which was not objected to, says Penney is not liable as an insurer against accident to invitees who might use the alley approach to the rear entrance but would violate its duty only if negligent as alleged. It also says—properly—the mere happening of an accident under the circumstances here is not proof of negligence.

We disagree with defendant's argument directed to instruction 24 that it was under no duty to keep any place other than the leased premises in a reasonably safe condition for invitees. The duty owed to invitees by the inviter of keeping the premises in reasonably safe condition extends to the means of ingress and egress. Atherton v. Hoenig's Grocery, supra, 249 Iowa 50, 53, 86 N.W.2d 252, 254; Anderson v. Younker Brothers, Inc., 249 Iowa 923, 926, 89 N.W.2d 858, 860. See also Division V hereof.

With instructions to reinstate the verdict for plaintiff against defendant Penney and enter judgment thereon, the cause is—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.