**Jimmie Dale ADAMS and Tonna G. Adams, Appellants,**

**v.**

**R. S. BACON VENEER COMPANY, a corporation, and Hubbard Walnut Company, a corporation, Appellees.**

**No. 53050.**

Supreme Court of Iowa.

Nov. 12, 1968.

Rehearing Denied Jan. 13, 1969.

William T. Connery, Dubuque, for appellants.

Kenline, Reynolds, Roedell & Breitbach, Dubuque, for appellees.

MOORE, Justice.

Plaintiffs, husband and wife, seek damages resulting from a fall by Jimmie Dale Adams on defendants' premises alleged to have been in a dangerous and hazardous condition. The trial court held plaintiffs failed to prove actionable negligence and directed a verdict for defendants. Plaintiffs have appealed. We reverse.

The wife's claim is derivative and therefore we will refer to Jimmie Dale Adams as plaintiff. At all times material, defendant companies jointly owned and operated the log and lumber yard where plaintiff was injured. We will hereafter refer to them as defendant.

The question presented is whether plaintiff's evidence was sufficient to generate a jury question on plaintiff's contention defendant failed to exercise reasonable care to make its log unloading lot reasonably safe within the scope of plaintiff's invitation.

I. In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion is made. Citation of authorities for this is unnecessary. Rule 344(f)2, Rules of Civil Procedure. With this rule in mind we summarize plaintiff's evidence. The court directed the verdict at the close of plaintiff's case in chief.

On December 29, 1963 John Adams, plaintiff's father, and Willard Whitsel near Freeport, Illinois, loaded 18 or 19 walnut logs, owned by them, on Whitsel's 1959 G.M.C. truck for transportation to Dubuque, Iowa, for eventual sale. They intended to sell them to defendant or some other buyer dependent upon the best available price.

Whitsel's truck was equipped with a flat bed 13 feet long, 7½ feet wide and had four support trip stakes. These trip stakes operated by bolt on the bottom of the stake supported by a short chain fastened to the bed of the truck. When released a stake swings down so the logs can be unloaded.

About 8:30 a. m. December 30, Whitsel accompanied by plaintiff as a helper drove to defendant's business premises in Dubuque for the purpose of having the logs scaled and getting defendant's bid for them. Scaling means measuring and grading the walnut logs. This was the customary method followed by sellers and buyers of walnut logs. The logs were to be unloaded by the owner on defendant's lot and if not purchased after scaling defendant reloaded them.

Whitsel was aware of this practice and after stopping his truck near defendant's office was directed by Mr. Huff, defendant's agent, to unload in defendant's log yard, about 150 feet from the office. Whitsel, accompanied by plaintiff, then drove into the log yard and unloading was started at the place pointed out by Huff.

As plaintiff alighted from the right side of the truck cab he observed the surface of the lot was slippery and covered with snow and ice. He then walked around the front to the left side of the truck where he, with Whitsel's help loosened and removed a binder chain which was used to help secure the logs. As Whitsel was removing the left front trip stake, plaintiff got a cant-hook from the truck. A cant-hook is a device 3 to 5 feet long equipped with a beveled hoop. It is used to roll or skid logs.

Plaintiff then went to the area of the left rear stake and, after removing a pin, struck it with the cant-hook. This released the stake and some of the logs started to roll down. Plaintiff knew of this method of unloading and that it would be necessary for him to jump to one side to avoid being struck by the falling logs.

As plaintiff attempted to jump back and to one side his left foot slipped forward and was hit and crushed by a falling log. Amputation was required. When plaintiff's left foot slipped forward he went down on his right knee and was in that position when injured.

While on the ground after his injury plaintiff observed the surrounding surface. He testified: "I don't believe I ever worked in a place where there was ice like that. It was slippery and I knew it was slippery. I don't believe I ever worked in a place where it was that slippery with ice."

Whitsel's testimony in narrative form in the record includes: "The area where my truck was parked, (for unloading) we looked at the ground there. There was approximately four inches of packed snow and ice on the ground, and wood chips and bark scattered around there. There were some ruts there where they had been driving lifts around there that was cutting the packed snow, they were uneven. There were places here where it was slick. There were chunks that had been knocked out of

the ice from the equipment being used there and logs hitting the ground and ice where they had been unloaded. * * * There was bark and chips in the immediate area where this accident happened. This surface was hard. Regarding bark and chips frozen into the surface there, there was lots of them frozen into the ground." Plaintiff's father came to the scene soon after the accident. He described the surface substantially the same as Whitsel.

It had not snowed the day of the accident. No sand, salt or chemicals had been used on the log unloading area.

II. In explaining to the jury the reasons for the directed verdict the trial court's remarks include: "With regard to the claim of negligence arising out of the condition of the surface of the unloading area, you are instructed that, at the time of his injury, Jimmie Dale Adams was an invitee on defendants' property, and that it is only when the slippery or hazardous condition of the surface is known to the owner and not known to the invitee that recovery is permitted. * * * To recover on this theory of negligence plaintiffs must establish that a hidden, obscure or unknown hazard caused the injury to Jimmie Dale Adams."

Such limited principles of law may find support in Atherton v. Hoenig's Grocery, 249 Iowa 50, 54, 55, 86 N.W.2d 252, 254, but as we point out in Knudsen v. Merle Hay Plaza, Inc., Iowa, 160 N.W.2d 279, 281, this is no longer applicable Iowa law in cases such as that now before us.

The business-invitee rule announced in the Atherton case was first modified in Hanson v. Town and Country etc. Center, 259 Iowa 542, 548, 549, 144 N.W.2d 870, 874, 875, where we say: "An open or obvious defect might be the equivalent of a trap or pitfall simply because the possessor should know that the invitee would have no reason to anticipate it, appreciate the hazard created by the condition or guard against it.

"Section 343 as it now appears in Restatement, Second, Torts, provides:

" 'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

" '(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

" '(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and ·

" '(c) fails to exercise reasonable care to protect them against the danger.'

"This section should be read together with section 343A relating to known or obvious dangers which has been added in Restatement, Second, Torts, and provides:

" '(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. * * *'

"As stated in 343A, there are some situations in which there is the duty to protect the invitee against even known dangers, where the possessor should anticipate harm to the invitee notwithstanding such knowledge. Restatement, Second, Torts, § 343, comment (b).

"Comment (b) under section 343A states:

" '(b) The word "known" denotes not only knowledge of the existence of the condition or activity itself, *but also appreciation of the danger it involves.* Thus the condition or activity must not only be known to exist, but it must also be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence and judgment' (emphasis added).

"The changes in section 343, Restatement, Second, Torts, and the definitions in the above comment, were not in the Restatement when Atherton v. Hoenig's Grocery, supra, was decided.

"To resolve the question presented, supra, we must determine whether under all the facts and circumstances there is sufficient evidence defendant, in the exercise of reasonable care to make the premises reasonably safe for plaintiff-invitee, should have expected that despite the obviousness of the condition of the strip involved, plaintiff would not realize the hazard and would fail to protect herself against it.

"While ordinarily a possessor of real estate would not be liable (or would not reasonably anticipate an unreasonable risk of harm to an invitee from an open or obvious defect), negligence may exist even though a defect is, in fact, open and obvious where the circumstances are such that there is reason to believe it would not be discovered or become obvious to the invitee or the risk of harm involved would not be anticipated or appreciated by the invitee. In such circumstances there may be generated a jury question as to whether the premises are reasonably safe."

The modified rule as announced in Hanson has been approved and applied in Meader v. Paetz Grocery Co., Inc., 259 Iowa 1101, 1106, 1107, 147 N.W.2d 211, 215, 216; Smith v. J. C. Penney Company, Iowa, 149 N.W.2d 794, 801; Knudsen v. Merle Hay Plaza, Inc., Iowa, 160 N.W.2d 279, 281, 282; Bradt v. Grell Construction, Inc., Iowa, 161 N.W.2d 336, filed September 17, 1968. In Hanson and our cited subsequent opinions, except Meader, we held that although the invitee knew the surface condition the evidence was sufficient to make a jury question of whether there had been a breach of duty owed the invitee.

■ To resolve the question of whether the possessor should know the invitee would not anticipate or guard against open and obvious defects in the premises it must be measured in the light of all the facts

shown. Hanson v. Town and Country etc. Center, supra; Meader v. Paetz Grocery Co., Inc., supra.

■ Particularly in view of the evidence defendant knew the method of unloading logs which required quick movement by those so engaged and then directed the place on its premises for such work to be done we believe there was sufficient evidence to make a jury question as to whether defendant had breached its duty to plaintiff, a business-invitee.

In fairness to the trial court it must be observed this case was tried before our Hanson opinion.

■ III. In addition to attempting to sustain the trial court on this basis of the ruling made, defendant contends the motion for directed verdict was good on the asserted ground that plaintiff was guilty of contributory negligence as a matter of law. Defendant is entitled to argue the ruling should be affirmed on any asserted ground of the motion to direct even though the motion was not sustained on such ground. Strang v. Frink, 257 Iowa 1106, 1107, 135 N.W.2d 103, 104; Ontario Livestock Comm. Co. v. Flynn, 256 Iowa 116, 123, 124, 126 N.W.2d 362, 366, 367.

■ The accident and plaintiff's injury occurred before July 4, 1965, the effective date of the amendment to section 619.17, Code, 1962, which changed the burden of pleading and proving negligence of plaintiff, if any, when relied upon as a complete defense or bar to plaintiff's recovery. Trial of the cause commenced May 31, 1966. It was therefore the burden of defendant to plead and prove plaintiff's negligence contributed in some way or in some degree directly to his injury. Schultz v. Gosselink, Iowa, 148 N.W.2d 434, 437, 438; Burch v. Witt, Iowa, 149 N.W.2d 126, 127; Harlan v. Passot, Iowa, 150 N.W.2d 87, 90.

■ Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in excep-

tional cases that they are decided as matters of law. Rule 344(f)10, R.C.P.

■ The issue of freedom from contributory negligence is closely related to that of defendant's primary negligence and depends upon the same reasoning. Mere knowledge of some danger is not conclusive evidence of contributory negligence. Smith v. J. C. Penney Company, supra, 149 N.W.2d 794, 802, and citations. The question of freedom from contributory negligence here was for the jury.

Reversed and remanded for new trial.

GARFIELD, C. J., and SNELL, MASON, RAWLINGS and BECKER, JJ., concur.

LeGRAND, LARSON and STUART, JJ., dissent.

LeGRAND, Justice (dissenting).

I can find no evidence in this record which would permit a verdict against defendants and therefore I must dissent.

Since Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252, we have considered the duty of an occupier of real estate to an invitee in numerous cases, including Anthes v. Anthes, 258 Iowa 260, 139 N.W.2d 201; Hanson v. Town and Country Shopping Center, 259 Iowa 542, 144 N.W.2d 870. Meader v. Paetz Grocery Company, 259 Iowa 1101, 147 N.W.2d 211; Smith v. J. C. Penney Co., Iowa, 149 N.W.2d 794; Chevraux v. Nahas, Iowa, 150 N.W.2d 78; Knudsen v. Merle Hay Plaza, Inc., Iowa, 160 N.W.2d 279 and Bradt v. Grell Construction Co., filed September 17, 1968.

We are now committed to the rule that the occupier of real estate is not relieved of liability simply because his invitee was injured by an open, obvious or known defect or condition if it appears the invitee would not discover or realize the danger or would fail to protect himself against it. This is based on the language used in sec-

tion 343, Restatement, Second, Torts, as set out in the majority opinion. Although we have reached different results on different factual situations in the cases above listed, all of them have been based on the Restatement principle just stated.

The present controversy is here on an appeal from a directed verdict in favor of defendant at the end of plaintiff's evidence. We are not concerned with plaintiff's contributory negligence nor the question of assumption of risk, but we consider only if plaintiff made out a case of negligence sufficient to go to the jury. I agree with the trial court that he failed to do so and I believe the record conclusively negatives any theory upon which negligence could be predicated.

The majority bases its finding partially on the following testimony of plaintiff as he lay on the ground following his injury:

"I don't believe I ever worked in a place where there was ice like that. It was slippery and I knew it was slippery. I don't believe I ever worked in a place where it was that slippery with ice."

I believe the record discloses this statement—and numerous others similar to it—concerns observations made by plaintiff *prior* to his fall.

Some of these references, taken from both his direct and cross-examination, follow:

"I noticed the ground where I got out of the truck and had an opportunity to observe the ground where I was walking around. In places it was extremely icy. In places it was snow packed and there was bark lying around, scattered generally all over the area * * * The surface of the ground that I was standing on was icy and on it there were a few pieces of bark * * * I could turn to the left and run out that way, but that would be the way the logs would be coming off, rolling that way. I was turning to the right to see the logs on the truck * * * This is the way I always did it * * * I didn't want to turn to the left, I imagine because the right is the side the logs are on, so that I could see the logs * * * Didn't look to me like there was any snow and ice removed from the surface of this log unloading area where we were unloading logs * * * I knew that the chain had been taken from the logs, that the only thing or device holding the logs on the bed of the truck was the left rear trip stake as far as left side is concerned * * * Upon seeing the loop come free from the trip mechanism I knew that trip stake would fall, that part of the load, some of the logs might be released and fall from the truck * * * Upon knocking away this loop I took approximately one or two (steps), just enough to get turned around, and I turned to the right to get away from the logs if they should roll off the bed of the truck * * * When I got out of the right side of the truck the first time I observed snow or ice as I stepped onto the ground. The surface I stepped on was slippery * * * As I walked along the left side of the truck, past the left door and back to where the chains were binding the load of logs on the truck, there was an extreme lot of ice on the ground. It was very slippery * * * As I then walked again from the truck cab back to the rear wheel and stake, I observed the condition of the ground then. It was icy and slippery. * * * In this position * * * some two and a half feet to the rear from the stake upon which I was working, I observed condition of the ground while standing, ice and slippery * * It was a clear day. Everything about the yard and the ground was clear to me that morning. I don't believe I ever worked in a place where there was ice like that. It was slippery and I knew it was slippery. I don't believe I ever worked in a place where it was that slippery with ice. * * * I have been out to the Bacon yard several times over the past years * * * I rode with whoever owned logs. I had been there before * * * to help unload loads of logs for inspection. * * * I helped to place that load of logs on the truck the day before the accident. I knew what the gen-

eral load was like, a portion of the load was extending beyond the rear of the bed of the truck maybe a foot or two I don't know for sure."

All of this testimony relates to plaintiff's observations and knowledge before his injury. Not only do these excerpts from the record show he saw the icy condition, but also prove conclusively he appreciated the danger of the situation and knew the hazards which confronted him. He had unloaded logs before; he knew that logs rolled off the truck, once the stakes were freed; he even knew which way he should move to avoid the falling logs; this was his trade, his business.

The test is whether a reasonably prudent person under the same circumstances would appreciate the danger which existed from a known condition. Meader v. Paetz Grocery Co., supra, at page 1106 of 259 Iowa, 147 N.W.2d 211. Even one unfamiliar with this type of work may be presumed to know that wrestling heavy logs from a flat bed truck upon an icy surface is dangerous. This takes no expertise. But in addition to that, plaintiff was one who by training and experience knew the hazards of this operation, even under favorable circumstances. Plaintiff's testimony leaves no possible doubt that he was keenly aware his job required both care and agility to avoid injury from falling logs.

The majority says, "Particularly in view of the evidence defendant knew the method of unloading logs which required quick movement by those so engaged and then directed the place on its premises for such work to be done we believe there was sufficient evidence to make a jury question as to whether defendant had breached his duty to plaintiff, a business-invitee."

This sets out the Restatement rule in reverse. The test is not whether defendant knew the method of unloading logs, and its hazards, but whether *he should have anticipated plaintiff did not appreciate them and would not protect himself against*

*them.* Certainly defendant was entitled to assume plaintiff, as a reasonably prudent man, familiar with the business of unloading logs and the dangers it presented under the best of circumstances, and thoroughly aware of the slippery condition of the premises, would take adequate measures for his own safety. To hold otherwise does violence to the very rule we claim to have adopted.

In *Anthes* at page 266 of 258 Iowa, at page 205 of 139 N.W.2d we said, "Defendant erroneously assumes the accepted rule of law to be that an inviter is not liable where an existing *condition* is as well known to the invitee as it is to the inviter. This can be and is sometimes only half the story. * * * Conditions may be such as to make a danger or peril self-apparent. On the other hand conditions may be such that the danger is latent, concealed or hidden. * * *

"In the case now before us plaintiff admittedly saw existing *conditions.* * * * A jury question was clearly presented as to whether plaintiff *saw or should have appreciated the perils or dangers of the conditions* he observed."

In Hanson at page 549 of 259 Iowa, at page 875 of 144 N.W.2d appears this: " * * * Negligence may exist even though a defect is, in fact, open and obvious where the circumstances are such that there is reason to believe it would not be discovered or become obvious to the invitee or the risk of harm involved would not be anticipated or appreciated by the invitee. * * * " In that same opinion at page 549, at page 874 of 144 N.W.2d we quote with approval this comment from section 343A of the Restatement, Second, Torts, "The word 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist, but it must also be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence and

judgment." In Meader at page 1110 of 259 Iowa, at page 218 of 147 N.W.2d we say, "In other words the inviter should not be charged with failure to anticipate that the invitee, aware of the business operation, will not measure up to his obligation and avoid the condition. To hold otherwise would surely make the operator an insurer, and all authorities agree the inviter's obligation does not extend that far.

"The rule, then, as we view it, is that the possessor of land is held liable for harm caused to an invitee by a condition of which he was aware or, in the exercise of due care, should have been aware, only if he realizes or should realize that the condition constitutes an unreasonable risk to the invitee, and has no reason to believe that the invitee will observe the condition and realize the risk. In considering whether the invitee will discover and realize the risk, the owner is entitled to assume the invitee will act as a prudent person under the circumstances. Restatement, Second, Torts, section 343." To like effect in the Chevraux case at page 81 of 150 N. W.2d we put it this way: "* * * If an existing condition on the property of an inviter is obvious, that is if both the condition and attendant risk are open, visible and apparent and would be recognized by a reasonable person in the position of an invitee, then the former would not be liable to the latter for physical harm caused him by the condition of the visited premises." Statements to like effect may be found in Smith v. J. C. Penney Company, supra; Knudsen v. Merle Hay Plaza, Inc., supra, and Bradt v. Grell Construction Co., supra.

Not a bit of evidence in this record reveals any conduct by defendant which would subject him to liability under the rules just set forth. Plaintiff not only was fully aware of the conditions then existing, but he also appreciated the attendant dangers. Furthermore there is nothing to suggest that defendant should have anticipated plaintiff would not conduct himself as a reasonably prudent person under the circumstances then existing. If defendant's conduct here be negligent, then we are indeed but one short step removed from making the inviter the insurer of his invitee's safety.

I must also mention that I do not agree with the majority that the trial court used the old Atherton rule in his decision on this motion for directed verdict. The majority quotes the trial court as holding, "To recover on this theory of negligence plaintiff must establish that a hidden, obscure or unknown hazard caused the injury to Jimmy Dale Adams." However, immediately following this the trial court said, "This they have failed to do, but rather they have established clearly that the defect that contributed to his injury was *as well known and understood by him as it could be by anyone*." (Emphasis added) I agree with the trial court, and the fact the condition was both known and understood brings the matter squarely within the Restatement rule and our numerous pronouncements that recovery should be denied under such circumstances.

I would affirm the trial court's ruling.

LARSON and STUART, JJ., join in this dissent.