FRANK NIZZI, appellant, v. LAVERTY SPRAYERS, INC., appellee.

No. 52127.

114

June 14, 1966.

W. Lawrence Oliver, of Des Moines, for appellant.

Roy W. Meadows and Whitfield, Musgrave, Selvy & Kelly, all of Des Moines, for appellee.

Mason, J.—Plaintiff, owner of a tract of farmland in Polk County, brings this action at law, seeking damages alleged to have resulted from defendant's spraying plaintiff's farm pond and pasture with DDT 5%, causing loss of use of the pond and pasture for feed and water for plaintiff's dairy herd, as well as recreation; physical pain, mental anguish and aggravation of a preexisting back injury.

Trial to the jury resulted in a verdict of $600 for loss of use of the pond and pasture and $123 for aggravation of the preexisting injury, against Laverty Sprayers, Inc. His motion for new trial being overruled, plaintiff appeals from the judgment on the verdict. Laverty Sprayers, Inc. cross-appeals and will hereinafter be referred to as defendant.

I. Plaintiff's tract is adjacent to a field of sweet corn leased to Beaver Valley Canning Company. Laverty Sprayers, Inc. owns and operates an aerial spraying business under a Federal Aviation Agency permit and does contract spraying for farmers and business concerns. Defendant was hired by Beaver Valley Canning Company to spray its sweet corn on July 7, 1964, for corn borers. Defendant applied the compound, and later plaintiff and others observed a residue of the granular substance of a similar nature to that applied to the sweet corn on part of plaintiff's pasture between the field of sweet corn and the farm pond, an area claimed to consist of approximately 50 acres. After the spraying, the area involved was fenced off by Beaver Valley Canning Company with an electric fence for more than 30 days.

On July 16 water and milk samples were taken by the Iowa Department of Agriculture and on October 15 grass samples were taken from an area adjacent to the pond by representatives of the same department. All of the samples were examined by the Wisconsin Alumni Research Foundation Laboratory. These tests resulted in a finding that the water contained, if any DDT, 0.3 parts per billion, milk 0.001 parts per million, grass 0.030 parts per million on sample one and 0.025 parts per million on sample two.

Plaintiff originally instituted suit against Laverty Elevators, Inc., seeking damages for a spraying incident alleged to have occurred in August 1962 and from the second spraying in July 1964. Plaintiff amended his petition by bringing in Laverty Sprayers, Inc. as a defendant and repeated substantially the same allegations of his petition against Laverty Elevators, Inc., except no reference was made to the spraying incident alleged to have occurred in 1962. At conclusion of plaintiff's case, the trial court directed a verdict in favor of Laverty Elevators, Inc., and at the conclusion of all the evidence submitted the issues as to Laverty Sprayers, Inc.

II. Plaintiff contends that due to defendant's act he had to take his dairy cattle off the pasture the evening of July 7 and from the farm pond with the result he was denied the use of the pasture and had to pump water for his stock from July 7 to

October 16, 1964; that as a result of the hand pumping of water he aggravated a preexisting back injury which necessitated medical expense; that the lease value of the farm pond, stocked with bass and catfish and in the flyway of wild ducks and geese and which had been under lease for $500 per year, was lost; that he worried and suffered mental anguish from concern for his dairy herd, loss of the lease and extra work occasioned from loss of water and pasture.

Plaintiff assigns as errors relied on for additur or new trial: (1) ruling of the trial court made on the admission and exclusion of evidence (2) directing a verdict for Laverty Elevators, Inc. (3) failure to submit plaintiff's requested instructions, and (4) failure to grant a new trial.

III. We will first consider plaintiff's second assignment of error, the trial court's direction of a verdict for Laverty Elevators, Inc. Plaintiff contends this ruling deprived him of damages for the 1962 spraying and destroyed the element of willfulness and maliciousness by defendant as the result of the repeated spraying of his pasture and pond in 1964. Plaintiff's original petition sought punitive damages against Laverty Elevators, Inc., by reason of the 1962 and 1964 spraying.

The court was correct in directing a verdict for Laverty Elevators, Inc. at the close of plaintiff's evidence. Plaintiff's contention cannot be sustained.

Plaintiff's evidence shows without contradiction a portion of the Barton Miner farm, which joins plaintiff's on the south, was leased to Beaver Valley Canning Company in 1962 and 1964 for the production of sweet corn. Under the contract between Miner and the canning company, when the corn was laid by the field was turned over to the canning company. Any spraying necessary for corn borers was the canning company's obligation. In 1962 and 1964 Beaver Valley employed Laverty Sprayers, Inc. to spray the Miner farm. The 1964 spraying was accomplished on July 7. The following day Fred T. Wright, general manager of the canning company, learned that part of the Nizzi farm had been sprayed. Willis Meier, the canning company's fieldman, was out to the Nizzi farm the day before and subsequently an area of plaintiff's farm was fenced off with an electric fence.

Plaintiff's witness, Charles O. Laverty, president and treasurer of both Laverty Elevators and Laverty Sprayers, testified Ralph Swanson, his employee charged with making the billings for services of Laverty Sprayers billed the canning company for spraying the Miner farm. The witness further testified the airplane used in the spraying was owned by Laverty Sprayers.

The canning company issued no drafts to Laverty Elevators, Inc. for spraying the Miner farm nor did its records indicate any such payment.

Plaintiff testified that after the aerial spraying which he observed in 1962, he found a residue of granular substance similar to that found by him after the spraying on July 7, 1964. This constitutes all evidence offered by plaintiff bearing on his claim against Laverty Elevators. It was not sufficient to generate a jury question.

IV. Plaintiff assigns error in the refusal of his first requested instruction based on the amount claimed by him in his amendment to conform to proof.

The instructions in final draft were submitted by the court to counsel for both parties before being read to the jury. Plaintiff's counsel at that time stated he had no objections to them.

Rule 196, Rules of Civil Procedure, provides that all objections to giving or failing to give any instruction must be made specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.

Here plaintiff not only failed to follow rule 196 but stated to the court he had no objections to the instructions. This assignment is therefore without merit. Olson v. Truax, 250 Iowa 1040, 1050, 97 N.W.2d 900, 906, and citations; Christianson v. Kramer, 257 Iowa 974, 980, 135 N.W.2d 644, 648, and citations; Campbell v. Martin, 257 Iowa 1247, 1254, 136 N.W.2d 508, 513.

V. In connection with plaintiff's next assignment we do not now consider the trial court's sustaining of the claim of privilege of Roscoe Moll and Harold Nobel. As thus limited, plaintiff's complaint under his first assignment is directed to the court's ruling on the admission of evidence. We have considered each of plaintiff's references to the record under this assignment and find no reversible error.

118

■ VI. We now consider the sustaining of privilege of Moll and Nobel. They were inspectors for the Food and Drug Administration present in the courtroom and when called as plaintiff's witnesses refused to take the stand. Neither had been subpoenaed but Moll stated if he had been he would decline to answer under the regulations in Title 21, Code of Federal Regulations, chapter 1, part 4, section 4.1, entitled "Disclosure of Official Records and Information."

The court upheld the claim of privilege. Plaintiff contends he had a right to call anyone in the presence of the court concerning the case, under Code section 622.3. In what might be considered plaintiff's offer of proof, plaintiff stated Moll admitted he had gone to plaintiff's farm, taken samples of milk and given plaintiff a receipt therefor, following the July 7 spraying. No further offer was made.

Section 4.1(a), Code of Federal Regulations, supra, provides:

"No officer or employee of the Food and Drug Administration or of any other office or establishment in the Department of Health, Education and Welfare—except as otherwise specifically authorized in accordance with paragraph (c) * * * or except in the discharge of his official duties under the laws administered by the Food and Drug Administration—shall produce or disclose to any person, or before any tribunal, directly or indirectly, whether in response to a subpoena or otherwise, any record (including any file, letter, application, report, work sheet, or other paper or document) pertaining to the functions of the Food and Drug Administration, or any information acquired from any such record or otherwise acquired in the discharge of his official duties."

Subparagraph (b) of this section provides that a party subpoenaed shall respectfully decline to produce the records or information requested. Subparagraph (c) of this section provides that the officer may testify under certain conditions where he has received clearance from the commissioner.

Code section 622.3 is not applicable to this situation.

This presents the question: Is there a distinct privilege recognized today for "official information"—not qualifying as

secrets of state—the disclosure of which would be injurious to the government? That such a privilege clearly exists where it is declared expressly by statute, see 8 Wigmore, Evidence, Mc-Naughton Revision, section 2378.

Code section 622.11 provides:

"Public officers. A public officer cannot be examined as to communications made to him in official confidence, when the public interests would suffer by the disclosure."

When the claim of privilege is made, we are confronted with who determines when the public interest would suffer or a disclosure would be injurious to the government. We have a right to assume the trial court held the public interest would suffer by the disclosure plaintiff wanted these men to make.

The question is discussed in 8 Wigmore, Evidence, supra, section 2379. We approve what is there said:

"* * * In the United States, however—if opinions of the courts rather than opinions of the executive are to be the guide—the court determines the claim. This is as it should be. A court which abdicates its inherent function of determining the facts upon which the admissibility of evidence depends will furnish to bureaucratic officials too ample opportunities for abusing the privilege."

See also annotation, 32 A. L. R.2d 391 and Later Case Service, volume 4, page 24; Note, 58 Yale Law Journal 993.

■ The general rule is, the failure to offer proof of excluded testimony leaves nothing for review. There is an exception where, upon the whole record, what is sought to be proven is apparent. Plaintiff is not within the exception. Kramer v. F. W. Woolworth Co., 255 Iowa 633, 639, 123 N.W.2d 572, 575, and citations. There is nothing to review.

■ VII. There remains plaintiff's claim of error in refusing him a new trial for inadequacy of the verdict, primarily the amount fixed in answer to interrogatory two, "What damages did plaintiff sustain by reason of the aggravation of his preexisting injury?" The answer, $123, was the maximum for which recovery could be allowed for medical care, drugs and equipment under instruction 10. This instruction permitted further recovery for pain and mental anguish but nothing was allowed for such items.

Plaintiff urges the rules which govern when a verdict is excessive also apply where it is inadequate. In the alternative, plaintiff asks that we either make an additur to the extent that it reasonably comports with the proof or grant a new trial. We are not persuaded to do either. See Division IX, infra.

VIII. Defendant as a basis for its cross-appeal asserts as errors: (1) .Failure to direct a verdict for defendant. (2) Submission of aggravation of a preexisting injury. (3) Failure to instruct on plaintiff's duty to mitigate damages.

The trial court properly submitted to the jury the issue of liability of Laverty Sprayers, Inc., for loss of use of the pasture and pond for plaintiff's cattle. We think there was sufficient evidence to generate a jury question.

In addition to the facts set forth in Divisions I and III, supra, Myron Van Cleave, director of the pesticide division of the Iowa Department of Agriculture, testified the grass was contaminated, the federal government did not recommend that dairy cattle be sprayed with DDT 5% and it was the latter part of October 1964 before he gave plaintiff a verbal report he knew of no reason why the pasture could not be used again.

Three of defendant's witnesses, under cross-examination, testified that under no circumstances should dairy cattle be fed with a residue sprayed with DDT 5% nor should they be watered from a pond thus sprayed.

It was stipulated by the parties that DDT 5% was applied to the Miner sweet corn, Beaver Valley was billed for the services by Laverty Sprayers, Inc., who in turn received a check from Beaver Valley.

Plaintiff testified the pasture was out of use until October 7, 90 days, and the loss of use was of the fair and reasonable value of $1050. This was the amount submitted by the court in instruction 10.

Ordinarily, the measure of damages for temporary deprivation of use of property is the usable value during such period. 25 C. J. S., Damages, section 82. Where the injury is temporary, the measure of damages may include recovery for the loss of the use of the premises during the time the injury exists. 25 C. J. S., Damages, section 84; 22 Am. Jur.2d, Damages, section 135.

The court instructed on the proper measure of damages.

■ IX. The submission of plaintiff's claim for aggravation of his preexisting back injury presents a different problem. To generate a jury question there must be substantial evidence. A mere scintilla is not enough. Klunenberg v. Rottinghaus, 256 Iowa 731, 740, 129 N.W.2d 68, 69. It is our opinion plaintiff's claim for this item is too remote.

■ "It is the rule too well established to require the citation of authority that the question of proximate cause is generally for the jury to determine, although the line of demarcation between what is sufficiently proximate and what is too remote is often a thin one. If, upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause." Chenoweth v. Flynn, 251 Iowa 11, 17, 18, 99 N.W.2d 310, 314.

Restatement, Second, Torts, section 435(2), provides:

"The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."

Comment (e) on this subsection states:

"It is impossible to state any definite rules by which it can be determined that a particular result of the actor's negligent conduct is or is not so highly extraordinary as to prevent the conduct from being a legal cause of that result. This is a matter for the judgment of the court formulated after the event, and therefore, with the knowledge of the effect that was produced."

The award of $123 for aggravation of plaintiff's preexisting injury as returned in interrogatory two cannot stand.

X. Failure to give defendant's requested instruction on mitigation of damages is attacked in defendant's other assignment of error. There was no error in the court's refusal to give the requested instruction.

In support of this contention defendant cites Code section 619.8 which provides:

"No mitigating circumstances shall be proved unless pleaded, except such as are shown by or grow out of the testimony introduced by the adverse party."

Code section 619.7 provides for the introduction of mitigating facts in defense.

Defendant did not plead failure to mitigate damages.

 Where a plaintiff seeks damages for a wrongful act of defendant, plaintiff has the duty to minimize his damages, but the duty of proving that the damages could be minimized is on defendant. Lannom Mfg. Co. v. Strauss Co., 235 Iowa 97, 106, 15 N.W.2d 899, 903. These statutes treat the matter of minimizing damages as a special defense which defendant must plead and prove or he is limited to circumstances growing out of plaintiff's testimony. Shewry v. Heuer, 255 Iowa 147, 154, 121 N.W.2d 529, 533.

XI. Having considered all errors assigned on both appeals, the case is affirmed ón plaintiff's appeal, modified and affirmed on defendant's appeal and remanded for entry of judgment for plaintiff as modified by this opinion. Costs will be taxed two thirds to plaintiff and one third to defendant.—Affirmed on plaintiff's appeal, modified and affirmed on defendant's appeal and remanded with directions.

All JUSTICES concur.