Napoleon SMITH and Dorothy Mae
Smith, Appellants,

v.

WIRE ROPE CORPORATION OF AMER-
ICA, INC., Appellee (two cases).

Nos. 18719, 18720.

United States Court of Appeals
Eighth Circuit.

Aug. 28, 1967.

Henry Woods, Little Rock, Ark., for appellants; Sidney S. McMath and McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., on the brief.

J. W. Barron, Little Rock, Ark., for appellee; Rose, Meek, House, Barron, Nash & Williamson, Little Rock, Ark., on the brief.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and GIBSON, Circuit Judges.

VOGEL, Chief Judge.

Appellants, Napoleon Smith and his wife, Dorothy Mae Smith, commenced two actions against defendant-appellee, Wire Rope Corporation of America, Inc., claiming that the appellee's defective manufacture of wire cable was the cause of very severe personal injuries suffered by appellant Napoleon Smith. At all times relevant herein Napoleon Smith was an employee of S. O. G. of Arkansas, a construction company which was building a lock and dam complex on the Arkansas River. Defendant-appellee, Wire Rope Corporation, supplied to the S. O. G. company certain wire cable. The wire cable in question was being used as a transverse cable on a gantry crane. After being in use five days, the cable broke, causing a concrete piling being carried by the crane to swing free and severely injure appellant Napoleon Smith.

In the suits brought against the appellee, two independent bases of liability were urged by the appellants, one sounding in tort, alleging negligence in the design, manufacture and inspection of

the wire rope, and the second in contract, claiming breach of manufacturer's warranties. The cases were consolidated and tried to a jury, which returned a verdict for defendant-appellee. This appeal followed. The sole issue raised here is the propriety of the trial court's modification of Arkansas Model Jury Instruction No. 1001. We affirm.

The question is a narrow one for, although appellants were proceeding on two theories of liability, one in tort and one in contract, they claim no alleged impropriety in the instructions insofar as they involved the contract or breach of warranty cause of action. The issue before us is concerned with the tort or negligence action and the instructions therein. The challenged instruction provided:

"You are instructed that a manufacturer of a wire rope has the duty to use ordinary care in the selection of materials used therein, in the manufacturing thereof and to inspect it and to test it *so as to make it reasonably safe when used in the normal and ordinary way and* in order to protect those who are in the area of its use from unreasonable risk or harm while it is being used for its intended purpose or while it is being used for any purpose which should reasonably be expected by the manufacturer. Ordinary care on the part of the manufacturer means that degree of skill and care ordinarily possessed and used by manufacturers doing the same or similar work." (Emphasis supplied.)

With the exception of the italicized portion, the foregoing instruction was drawn verbatim from Arkansas Model Jury Instruction No. 1001. The italicized portion was added by the trial court. To this modification by addition the appellants took exception as follows:

"Mr. Woods: The plaintiffs object to the inclusion of the phrase 'when used in the normal and ordinary way' in the Court's Instruction No. 14. This is a modification of AMI 1001 which the plaintiffs feel is not justified since

a matter of abnormal use is a matter which is covered in other instructions. If the abnormal use of the product by S. O. G. caused the injuries to the plaintiff, then this is a matter of proximate causation and is also a matter of foreseeability, which is covered in other instructions and indeed in this very instruction. *As the instruction is given, it would appear that abnormal use or use out of the normal way by the defendant employer would be an absolute defense to plaintiffs' cause of action.* In truth and in fact, there could be concurring negligence. The abnormal use of the wire rope in question could concur with a defective manufacture of the rope in question, and the plaintiff's injuries could result from such concurrent negligence. As *the Instruction is here framed, abnormal use is made an absolute defense to the plaintiffs' cause of action,* and therefore the Instruction is erroneous and we request that the Instruction be given in conformity with AMI 1001." (Emphasis supplied.)

In order for the appellants to recover against the Wire Rope Corporation on either the breach of warranty theory or the tort theory, it was necessary to establish that the cable was in fact defectively manufactured. This was attempted through the presentation of expert testimony. Appellee countered by producing other expert testimony to the effect that there was nothing wrong in the inherent manufacture of the cable but that the untimely break therein, after a usage of only five days, was due to unusual fatigue. It was urged by appellee's experts that the fatigue was due to the S. O. G. company's use of a very small pulley on their crane apparatus which subjected the wire cable to much more severe flexing and bending than was recognized as reasonable by general manufacturers and trade specifications. It was appellee's position that it was not reasonable to require it to anticipate that its product would be used in a grossly abnormal way and then hold appellee liable for resultant injury.

█ Appellants' principal contention is that the trial court's modification of the A. M. J. Instruction by adding the words "so as to make it reasonably safe when used in the normal and ordinary way and" made it appear to the jury "that abnormal use or use out of the normal by the defendant [sic] employer would be an absolute defense to plaintiffs' cause of action" against appellee manufacturer, thereby precluding the jury from finding in appellants' favor even if they found that both negligence of the appellant's employer as well as the negligence of the appellee manufacturer may have concurrently been responsible for appellant's injuries.

█ Appellants in their brief quote Restatement 2d, Torts, § 447 and cite Arkansas cases which adhere to the principle that a negligent intervening act of a third person—here the S. O. G. company—will not relieve the original wrongdoer of liability if the intervening conduct was foreseeable, not highly extraordinary and was the normal consequence of the original actor's conduct. Although this is generally held to be a sound legal principle and in light of Hill v. Wilson, 1949, 216 Ark. 179, 224 S.W.2d 797, 800, and Southwestern Bell Telephone Co. v. Adams, 1939, 199 Ark. 254, 133 S.W.2d 867, 872, is apparently the law of Arkansas, complaint upon this ground is of no avail to appellants unless they can show that the complained-of instruction did in fact preclude the jury from considering this principle. We think instruction No. 12 as given by the court, which stated that

"When the negligent acts or omissions of two corporations work together as proximate causes of damages to an individual, each of these corporations may be found to be liable. This is true regardless of the relative degrees of fault between them. *If you find that the negligence of the Wire Rope Corporation of America, Inc., proximately caused damage to the plaintiff, it is not a defense that S. O. G. of*

*Arkansas may also have been to blame"* (Emphasis supplied.)

clearly presents to the jury the precise question of concurrent responsibility which appellants allege was removed from jury consideration by the trial court's modification of A.M.I. 1001: A careful reading of the A.M.I. 1001 instruction as given shows that it placed upon the manufacturer the duty to make his product safe for *any* purpose which should reasonably have been expected. The given instruction, after adding the objected-to words, "so as to make it reasonably safe when used in the normal and ordinary way and" continued as follows:

"* * * in order to protect those who are in the area of its use from unreasonable risk or harm while it is being used for its intended purpose *or while it is being used for any purpose which should reasonably be expected by the manufacturer.*" (Emphasis supplied.)

The italicized portion given in conjunction with instruction No. 12, supra, clearly indicates that the modification of A.M.I. 1001 by the trial court did in no sense create an absolute defense based upon abnormal use which would absolve an original wrongdoer of liability for negligent acts. Instructions must be viewed in their entirety rather than in isolated segments. Even if a single instruction is erroneous, it does not call for reversal if it is cured by a subsequent charge or by consideration of the entire charge. Standard Oil Co. of Cal. v. Perkins, 9 Cir., 1965, 347 F.2d 379, 389; McDonough v. United States, 8 Cir., 1957, 248 F.2d 725; Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 1948, 165 F.2d 473, 1 A.L.R. 2d 290. Cf., Brown v. San Alberto Cia Armadora S. A., 3 Cir., 1962, 305 F.2d 288. We accordingly hold that the appellants were clearly not prejudiced by the modification of the A.M.I.-approved instruction. Approved model instructions are of great aid to trial courts in presenting clearly to the jury involved legal issues. They are, however, in no sense sacrosanct and must be subject to trial

court modification to meet the facts and legal requirements of the case being tried. Erwin v. Allied Van Lines, Inc., 1966, 240 Ark. 593, 401 S.W.2d 25, 26

Affirmed.