Marvin L. KNUDSEN, Appellee,

v.

MERLE HAY PLAZA, INC., Appellant.

No. 52915.

Supreme Court of Iowa.

July 18, 1968.

Rehearing Denied Sept. 4, 1968.

Jones, Hoffmann & Davison, by Burns H. Davison, II, Des Moines, for appellant.

Janss, Dreher, Wilson & Adams, by Yale H. Iverson and Anna I. Shinkle, Des Moines, for appellee.

RAWLINGS, Justice.

By action at law plaintiff seeks damages resulting from a fall on an ice covered portion of defendant's shopping center parking lot. Trial to jury, commenced November 21, 1966, resulted in judgment on verdict for plaintiff. Motions by defendant for judgment notwithstanding the verdict, or for new trial, were overruled and it appeals. We affirm.

December 19, 1964, plaintiff and his wife drove to Merle Hay Plaza in Des Moines. After having parked their automobile they went to Sears and Younkers, made purchases in both stores, then started back to the car.

Using a walkway until about half the distance between Bishops and Safeway they proceeded in a northeasterly direction across the lot. There are no sidewalks running through it.

When about 20 to 30 feet from what is identified as Pole East 19, plaintiff saw some women near that fixture. One had fallen, another fell trying to help her and a third was attempting to assist them. Plaintiff handed his packages to Mrs. Knudsen and started over to help these ladies. During this time he also noticed a dirty pile of snow about three feet high around the pole.

Events which followed are best disclosed by quoting the record. To the extent here relevant this is plaintiff's testimony on cross-examination:

"Q. How far back did you see the snow, this snow around East 19 here? A. Well, the snow, of course, the snow set up high.

"Q. Yes. A. I could see that and I couldn't see the ice until I got right up to it.

"Q. Did you see the ice before or after you saw the ladies falling on it? A. Well, it all happened at once.

"Q. Could you tell they were falling on ice? A. Well, I could after I got there.

"If I had continued the direction I was walking, I would have gone past the area of the ice but I turned to my left to help the ladies.

"* * *

"Q. About where were you when you realized they were on ice? A. Well, I

imagine that I was just about there (indicating).

"Q. About where that X is? A. No, no. Pretty near to the, to the ice or what is shown there as ice.

"Q. Before you got on the ice you figured out they were falling on ice, didn't you? A. Yes.

"At the time of the fall it was cloudy, snowing a trifle, no lights were on in the plaza or on cars. I did not use my lights to drive home.

"* * *

"Q. Before you got on the ice you could see the ice? A. Yes, right prior to getting on the ice.

"Q. And you realized that these ladies were falling on ice? A. I did at that time.

"Q. Before you got on the ice? A. Right, entering the ice, yes.

"I never stopped to realize or think about it at that particular time because things happened so fast at that time. I was out on the ice a short step or two when I fell."

At time of plaintiff's fall he was about three or four feet from the women. He fell on his right arm, then worked his way to the edge of the ice patch. As a result of this fall plaintiff sustained personal injuries to be later considered.

The record also discloses other portions of the parking lot, at least in the area here concerned, were free of ice or snow.

Weather reports, in evidence, reveal there was a snowfall December 2, 1964, relatively little thereafter prior to the 19th, melting temperatures until the 16th, followed by three days of constant freezing conditions.

Defendant contends reversible error resulted from, (1) trial court's failure to direct a verdict for defendant on various grounds; (2) giving or failing to give certain jury instructions; (3) award of excessive damages.

I. Our review is confined to errors properly assigned and argued. Rule 344(a) (4) (Third), R.C.P.; Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447, 450; and McDannel v. Parkview Investment Corp., 257 Iowa 1160, 1166, 136 N.W.2d 281.

II. By instruction No. 6 the jury was told plaintiff at time here concerned was a business visitor, an invitee on defendant's land. See Hanson v. Town & Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d 870, 873.

No objection was offered as to that portion of the cited instruction and it stands as law of the case. Rule 196, R.C.P.; Clubb v. Osborn, 260 Iowa 223, 149 N.W.2d 318, 323; Nizzi v. Laverty Sprayers, Inc., 259 Iowa 112, 143 N.W.2d 312, 315; and Hurtig v. Bjork, 258 Iowa 155, 157, 138 N.W.2d 62.

III. In fact defendant challenges instruction 6 only because the jury was not told the danger or defect, for which warning is required, must be of such nature as not to be open and obvious to a person acting in the exercise of reasonable care.

Pursuing the matter one more step defendant claims the instruction given is faulty in that the condition existing on the parking lot, of which plaintiff makes complaint, was as open and obvious to him as to defendant, by reason of which there existed no duty on the part of the latter to give warning.

That contention may at one time have found support in Atherton v. Hoenig's Grocery, 249 Iowa 50, 54–55, 86 N.W.2d 252, but is no longer applicable Iowa law in cases such as that now before us.

This is well explained in Smith v. J. C. Penney Company, 260 Iowa 573, 149 N.W.2d 794, 801, where we said:

"The business-invitee rule announced in the Atherton case is somewhat qualified in Hanson v. Town & Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d

870, 873–876 and Meader v. Paetz Grocery Co., [259 Iowa 1101], 147 N.W.2d 211, 215.

"In the former, Mrs. Hanson was injured in a fall on rough, jagged and slick ice formed from snow pushed from a sidewalk adjoining defendant's parking lot. A verdict was directed for defendant on the ground it was not liable for injuries from dangers which are obvious, reasonably apparent or as well known to the person injured as to the owner. We reversed the judgment after pointing out the rule so applied was based in part upon Restatement, Torts, section 343, which was later changed in Restatement, Second, Torts. The later Restatement also adds section 343A which provides:

" '(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them *unless the possessor should anticipate the harm despite such knowledge or obviousness* * * *' (emphasis added).

"The Hanson opinion also points out that Comment (b) under new section 343A states:

" '(b) The word "known" denotes not only knowledge of the existence of the condition * * *, *but also appreciation of the danger it involves.* Thus the condition * * * must not only be known to exist, but it must also be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence and judgment' (emphasis also added).

"Our holding in the Hanson case is:

" 'Defects in premises which are in no sense hidden and could only be classified objectively as open and obvious, may be of such nature that the possessor should know the invitee would not anticipate or guard against them in using the premises within the scope of the invitation. * * *' "

In connection with the foregoing see also 31 Tenn.L.Rev. 485; 4 Vill.L.Rev. 256; and 20 Wash. & Lee L.Rev. 152.

Although defendant apparently contends otherwise, Chevraux v. Nahas, Iowa, 150 N.W.2d 78, is neither factually comparable nor does our holding in that case conflict with the views expressed in Smith v. J. C. Penney Company, supra. Chevraux merely applies the concept expressed in Restatement, Second, Torts, section 343A, previously adopted by this court, going to obviousness of condition *and* appreciation of attendant risk.

Under existing circumstances it is to us apparent defendant's assault upon the subject instruction is without merit.

By the same token we find no error in failure on the part of trial court to give defendant's requested instruction No. 4, premised in large part if not entirely on Atherton v. Hoenig's Grocery, supra.

■ Furthermore it cannot be said, as a matter of law, plaintiff failed to produce sufficient substantial evidence disclosing existence of a duty owing by defendant to plaintiff and a breach of that duty. See rule 344(f) (2), (10), R.C.P.

This means reversible error would have resulted from a directed verdict for defendant on these issues.

IV. It is also claimed by defendant, trial court erred in not directing a verdict, as requested, upon alleged assumption of risk by plaintiff, and in failing to give the jury an instruction on that asserted defense.

In taking this position it argues plaintiff assumed the risk of injury in that he deliberately and voluntarily elected to act with knowledge of the danger or hazard and appreciation or understanding of the attendant risk. This is the meaning commonly attributed to the doctrine and will be by us so considered in the case at hand. See in this regard Bohnsack v. Driftmier, 243 Iowa 383, 391, 52 N.W.2d 79; Jackson v. Chicago, M. St. P. & P. R. R. Co., 238 Iowa 1253, 1261, 30 N.W.2d 97; 65A C.J.S. Negligence § 174(1) (2) (3), pages 283–

298; 38 Am.Jur., Negligence, sections 171–173, pages 845–848; and Restatement, Second, Torts, sections 496A and 496D.

However, some authorities have adopted the view assumption of risk falls into at least three broad classifications. See Prosser, Law of Torts, Hornbook Series, Third Ed., pages 450–451.

■ Be that as it may, assumption of risk is an affirmative defense and the burden is on the pleader to prove it by a preponderance of the evidence. Rule 344(f)(5), (6), R.C.P.; Reeves v. Beekman, 256 Iowa 263, 270, 127 N.W.2d 95, and citations; and Miller v. Mathis, 233 Iowa 221, 227, 8 N.W.2d 744.

Furthermore, it is seldom a party having such burden establishes it as a matter of law. Jackson v. Chicago, M. St. P. & P. R. R. Co., supra.

V. With reference to the matter at hand, Marean v. Petersen, 259 Iowa 557, 144 N.W.2d 906, 912–913, contains these pertinent statements:

"In Bohnsack v. Driftmier, 243 Iowa 383, 392–393, 52 N.W.2d 79, 84, this court said: 'The doctrine of assumed risk is an application of the maxim, volenti non fit injuria— "That to which a person assents is not esteemed in law an injury." (Authorities cited.)

" '* * *

" 'Mere lack of care, without more, does not amount to assumption of risk. The doctrine involves a choice between a course known to be dangerous and one that is not. (Authorities cited.) "The doctrine of assumption of risk is not based on negligence but the voluntary assumption of the danger by the plaintiff with full knowledge thereof, * * *".

" 'It cannot logically be held that one has deliberately chosen a dangerous course of which he is ignorant merely because he should have known of it.' See also Restatement, Torts 2d, section 496D.

"* * *

"Stated otherwise assumption of risk defeats recovery because it is a previous abandonment of a right to complain if an accident occurs, while the essence of contributory negligence is carelessness, a matter of conduct, a lack of reasonable care leading more immediately to a specific accident. See 65 C.J.S. Negligence § 117, page 709, and Annos. 82 A.L.R.2d 1218."

Some courts have apparently held, where a fact issue is generated as to assumption of risk but the jury is not specifically instructed on it, no reversible error results if the instruction given relative to contributory negligence is broad enough to include those elements embraced in the assumed risk doctrine. We specifically repudiate any such approach for to do otherwise would only serve to perpetuate any confusion which may exist due to partial overlapping of the two principles.

Turning again to Marean v. Petersen, supra, this court said:

" 'We have frequently pointed out that assumption of risk should not be confused with contributory negligence. As said in White v. McVicker, supra, 216 Iowa 90, 91, 246 N.W. 385, 386, "While the doctrine of contributory negligence and assumption of risk may arise under the same set of facts and sometimes thus overlap each other, yet we have consistently distinguished them and held that they are distinct and separate and must not be confounded with each other." * * *.

" '* * *'

"Referring now to the case of Edwards v. Kirk, 227 Iowa 684, 687, 288 N.W. 875, we there explained the differentiation substantially as follows: Assumption of risk involves more or less deliberation, whereas contributory negligence implies lack of care, and hence absence of deliberate choice."

See also Annos. 82 A.L.R.2d 1221; 23 Wash. & Lee L.Rev. 91; and 1960 Wis. L.Rev. 460.

■ It is to us evident contributory negligence, as here instructed ,upon, or as an affirmative defense, can and must be distinguished from assumption of risk, precluding the giving of a jury instruction on either such concept which includes the other.

■ In the case at bar knowledge and appreciation of the peril, if any, were patently so close in point of time as to negate any reasonable possibility a known risk, with attendant appreciation of peril, was voluntarily encountered.

It is apparent the essential elements of assumed risk are not here present.

VI. Closely related to the subject here being considered is the matter of rescue.

An instruction given by trial court on that issue was never challenged by defendant. As aforesaid, it stands as law of the case and will be by us accordingly considered. See authorities cited in Division II, supra.

The rescue doctrine and its relationship to assumption of risk was considered and discussed by us in Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447, 454–456. Upon the basis of the factual situation there presented we held trial court did not err in refusing to instruct the jury on assumed risk.

But that does not mean such an instruction may never be appropriate in any rescue situation. Rather, it should be sparingly given.

■ Restatement, Second, Torts, section 496E states:

"(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

"(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

"(a) *avert harm to himself or another,* or

"(b) exercise or protect a right or privilege of which the defendant has no right to deprive him." (Emphasis supplied.)

And as the court said in MacLachlan v. Lutz, 249 Cal.App.2d 756, 57 Cal.Rptr. 833, 835: "It is well settled in California that such an instruction [on assumption of risk] is warranted only when there is evidence that plaintiff had actual knowledge of the particular risk, and also appreciated the magnitude thereof (Shahinian v. McCormick, 59 Cal.2d 554, 567, 30 Cal.Rptr. 521, 381 P.2d 377). The test is met if there is evidence to show *that plaintiff* must have had knowledge of the hazard. *Evidence merely that ordinary care could or should have led to its discovery relates only to contributory negligence, and not to assumption of risk* (Grey v. Fibreboard Paper Products Co., 65 A.C. 253, 257, 258 [65 Cal. 2d 240], 53 Cal.Rptr. 545, 418 P.2d 153). Of course, the evidence need not establish plaintiff's knowledge as a matter of law. The issue goes to the jury if there is any evidence, including inferences to be drawn from the circumstances, that plaintiff knew and appreciated the danger (Rabago v. Meraz, 60 Cal.2d 55, 62, 31 Cal.Rptr. 777, 383 P.2d 129)." (Emphasis supplied.)

As stated by Prosser, Law of Torts, Hornbook Series, Third Ed., page 466: "Those who dash in to save their own property, or the lives or property of others, from a peril * * *, do not assume the risk where the alternative is to allow the threatened harm to occur. In all of these cases, of course, the danger may be so extreme as to be out of all proportion to the value of the interest to be protected, and the plaintiff may be charged with contributory negligence in his own unreasonable conduct. And where there is a reasonably safe alternative open, the plaintiff's choice of the dangerous way is a free one, and may amount to both contributory negligence and assumption of risk."

With reference to rescue, contributory negligence and assumption of risk, see generally Hammonds v. Haven, Mo., 280 S.W. 2d 814, 816–817; Jay v. Walla Walla Col-

lege, 53 Wash.2d 590, 335 P.2d 458, 460–461; Hawkins v. Palmer, 29 Wash.2d 570, 188 P.2d 121, 123; 65A C.J.S. Negligence § 124, page 83; 38 Am.Jur., Negligence, section 228–229, pages 912–915; and 8 N.C.C.A., New Series, page 441.

In the case now before us the undisputed evidence discloses plaintiff was not aware of the existing risk or hazard until that moment when it was encountered. Neither can it be said he had an available alternate safer means by which to effectively carry out his rescue mission, time to deliberate upon the problem presented and effect a calculated choice, or that the danger posed was out of proportion to its intended purpose. Plaintiff was unexpectedly confronted with an unanticipated situation.

Under existing conditions we cannot say trial court committed reversible error in refusing to direct a verdict for defendant, or in failing to give an instruction on the assumption of risk issue.

VII. Plaintiff pled his cause of action in two divisions. The first contained an allegation of freedom from contributory negligence, omitted from the second.

Defendant answered denying in one division plaintiff's asserted freedom from contributory negligence, and in another alleging, with specifications, plaintiff had been contributorially negligent.

It is now claimed, in support of a reversal, trial court erred in failing to give an instruction to the jury embodying defendant's stated specifications of contributory negligence.

However, defendant's trial procedure alone serves to defeat this argument. In effect, it insisted plaintiff be required to prove his freedom from contributory negligence and the court ruled accordingly. Under these circumstances, it would have been error to instruct the jury upon defendant's alleged specifications of contributory negligence. Defendant cannot have the benefit of self-created error. As we said in Hackman v. Beckwith, 245 Iowa 791, 800, 64 N.W.2d 275, 281: "* * * it is elementary a litigant cannot complain of error which he has invited or to which he has assented."

The instruction given was, in substance, plaintiff must establish by a preponderance of the evidence he was free from any negligence which in any manner or degree contributed directly to the accident and damages, if any, sustained by him. This served to place the burden on plaintiff to prove freedom from negligence contributing to his injury. It was more favorable to defendant than would an instruction have been if given pursuant to Code section 619.-17, as amended by chapter 430, section 1, Acts of the Sixty-First General Assembly.

We are not here called upon to determine propriety of trial court's action in requiring plaintiff to assume burden of proof as to contributory negligence, and refrain from so doing. But see Harlan v. Passot, 260 Iowa 501, 150 N.W.2d 87, 89–90, and authorities cited.

Regardless of the foregoing, a search of the record fails to reveal plaintiff ever requested an instruction on the subject, or made timely objection to that given as aforesaid.

In this regard Rule 196, R.C.P., to the extent here applicable, provides in part: "Before argument to the jury begins, the court shall furnish counsel with a preliminary draft of instructions which it expects to give on all controversial issues, which shall not be part of the record. Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. *No other grounds or objections*

*shall be asserted thereafter, or considered on appeal."* (Emphasis supplied).

See also Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447, 454, and Hackman v. Beckwith, 245 Iowa 791, 800, 64 N.W.2d 275.

There is neither merit in the subject complaint, nor does defendant have standing to make it.

VIII. The jury awarded plaintiff $37,727.75. Defendant takes the position a verdict in that sum is excessive, and trial court erred in refusing grant of new trial, or in the alternative to order remittitur.

At time of trial plaintiff was 54. Life expectancy of one that age is 20.47 years.

For at least ten years prior to the accident he was employed as a painter and is right-handed.

Immediately after the fall plaintiff experienced severe pain, for which he took aspirin, then consulted Dr. Marvin Dubansky.

After trying conservative treatment this physician did an arthrogram requiring painful injection of dye into the shoulder. The x-rays taken disclosed a torn rotator cuff. This is described as a tearing of those muscles which hook into the upper arm bone, providing elevation, bringing the arm up and rotating it in the shoulder joint.

Surgery was performed February 16, 1965. In effecting this operation the doctor grabbed the muscle with a clamp but could not pull it down to where it normally hooks in because of contraction. As a result the arm was necessarily raised to a 90 degree angle in order to bring muscle and arm bone together.

Facilitation of the union required chiseling off a portion of the acromion or bone on the top, and scooping out that part of the arm bone into which the muscle was stitched. The arm was then tied above plaintiff's head in order to avoid pulling the muscle loose.

Dr. Dubansky's testimony also discloses that due to the amount of work done on the shoulder plaintiff suffered continuous pain for a period following surgery. Post-operative medication consisted of narcotics, followed by empirin and codeine for pain, with Indocin to combat inflammation around the joint.

Due to nature of the injury, surgical procedure, and restriction of motion in the shoulder, plaintiff was given a schedule of exercises.

His recovery was not normal. Myositis ossificans developed, which means a change in muscle mass due to atrophy of the deltoid and muscles of the rotator cuff.

Dr. Dubansky expressed the opinion plaintiff has permanent limitation in his movement, loss of power, and permanent physical impairment in his shoulder, unless there is some unexpected radical change.

He described the injury related functional disability in these comparative terms: "If the left arm be said to have 300 horsepower, the right arm has only 50 horsepower.

Despite the injury and resultant disability, plaintiff's employer permitted his return to work. But he is limited to the use of a stepladder, and in doing shoulder height work is compelled to hold and guide his right arm with the left hand. Fellow employees help out by assuming the tasks plaintiff is unable to perform.

He can no longer fish, hunt, swim, water ski, work on the family cabin, do any work about the house, nor even pound a nail. Plaintiff has trouble picking things up and dressing himself.

Briefly stated he has endured severe pain, incurred medical and hospital expenses in the sum of $1,288.49, lost $1,322.34 in earnings, and his injuries are permanent in nature.

In Anthes v. Anthes, 258 Iowa 260, 276, 139 N.W.2d 201, this court stated: "We have said a comparison of verdicts in dif-

ferent cases involving personal injuries is seldom helpful. Waterloo Savings Bank v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1376, 60 N.W.2d 572. To the extent any comparisons may be helpful, see annotations: 16 A.L.R.2d 3 and 16 A.L.R.2d 372.

"It is not for us to invade the province of the jury and we will not alter a verdict unless it is so flagrantly excessive or small, or so out of reason as to shock the conscience or sense of justice, or raises a presumption it is the result of passion, prejudice, or other ulterior motive, or is lacking in evidential support. Woode v. Kabela, [256 Iowa 622], 128 N.W.2d 241, 247, and Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 107 N.W.2d 85, 92. And in weighing verdicts we have also recognized the diminished purchasing power of the dollar. Brophy v. Iowa-Illinois Gas and Electric Company, 254 Iowa 895, 899, 119 N.W.2d 865." See also Fetters v. City of Des Moines, 260 Iowa 490, 149 N.W.2d 815, 821, and Beyer v. City of Dubuque, 258 Iowa 476, 489, 139 N.W.2d 428.

The jury resolved the matter of damages on all evidence presented, trial court deemed that determination reasonable and fair, and we find no good or compelling cause to now interfere.

IX. It is to us evident trial court did not err in overruling defendants' motions for judgment notwithstanding the verdict, and in the alternative for a new trial.

Affirmed.

GARFIELD, C. J., and MOORE, MASON and LeGRAND, JJ., concur.

BECKER, J., concurs in result.

STUART, LARSON and SNELL, JJ., dissent.

STUART, Justice (dissenting).

I respectfully dissent. I do not believe the evidence here is sufficient to raise a jury question as to defendant's negligence which was a proximate cause of plaintiff's injury. In any event, defendant was entitled to an instruction on assumption of risk.

I. Instruction No. 6 is a detailed instruction defining defendant's duties to plaintiff. Included therein is a statement of the law based on our holding in Hanson v. Town & Country Shopping Center, Inc., 259 Iowa 542, 546–552, 144 N.W.2d 870, 873–876, to the effect that: "The defendant was also required to protect the invitees against dangers which, although being open and obvious, were of such nature that the defendant should have known that the invitee would have no reason to anticipate it, appreciate the hazard created by the condition or guard against it."

In Hanson the majority felt the facts were sufficient to raise a jury question in this regard. There, the ice and snow was a strip four or five feet wide and about 150 feet long next to the curb. Plaintiff had her hands full of packages. There were no marked crosswalks and she had to thread her way between parked automobiles. She fell on the ice while doing so. It was almost dark and plaintiff attributed "her failure to see and recognize the dangerous condition to inadequate light".

There are no such facts here. Defendant had piled snow about three feet high in the vicinity of pole 19. The melting snow had created an icy spot about 12 to 14 feet in diameter. Plaintiff did not remember seeing other ice or snow in the parking lot that day. At the time of the accident it was cloudy but daylight. No cars were parked in the area.

As plaintiff and his wife were returning to their car from the shopping center, he noticed three women "in trouble" about 25 to 30 feet away. One woman had fallen. He handed the packages he was carrying to his wife and went out of his way to render assistance. As he was approaching, a second woman fell trying to help the first one up. The third lady was trying to help the other two. His testi-

mony is not consistent as to when he first realized they had fallen on ice, but viewing the evidence most favorably to plaintiff, he knew it was ice before he stepped on it.

In Chevraux v. Nahas, Iowa, 150 N.W.2d 78, 81, we said: " * * *, if an existing condition on the property of an inviter is obvious, that is if both the condition and attendant risk are open, visible and apparent and would be recognized by a reasonable person in the position of an invitee, then the former would not be liable to the latter for physical harm caused him by the condition of the visited premises."

There is no claim the icy patch was not obvious. Common experience has taught us all that icy surfaces are dangerous. In my opinion the jury could not properly find defendant should have known invitee "would have no reason to anticipate danger or appreciate the hazard created" by the icy patch. Plaintiff knew it was ice before he was on it and, having seen two women fall, he must have anticipated the danger and appreciated the hazard from these known facts. Therefore, such claimed negligence could not have been the proximate cause of plaintiff's injury. I do not believe these facts are comparable to those in Hanson and find insufficient evidence to submit the case to the jury on the theory of liability based on the care of an ordinary reasonable prudent person under these circumstances.

As a matter of social philosophy, I am not opposed to placing a higher degree of care on those who construct private parking lots as an inducement for the public to trade in adjoining stores. It might well be a proper cost of doing business in this manner. However, I do not care to reach this result by stretching our concept of the care of the ordinary reasonable prudent man. It borders on hypocrisy to allow a jury to find fault under the usual instructions. We expect the jury to invoke a social philosophy which we have failed to announce. It is not fair to plaintiffs or juries. Parties are entitled to have their case decided on the facts

under the law set out in the instructions. One plaintiff should not be denied recovery because a jury reads and conscientiously applies the law to the facts and another plaintiff with the same facts awarded damages because the jury believes the loss should be spread by insurance. This disparity in result occurs frequently when cases like the instant one are submitted to a jury.

II. The trial court refused to submit the defense of assumption of risk to the jury. Under the authorities cited in the majority opinion, I believe it should have been submitted. A person assumes the risk of his conduct when he voluntarily assumes a danger with full knowledge thereof. There was such evidence here.

The following sentences are taken from the next to last paragraph of division VI of the majority opinion: "In the case now before us the undisputed evidence discloses plaintiff was not aware of the existing risk or hazard until that moment when it was encountered." This position is not supported by the record. On direct examination plaintiff testified: "As we were walking, I noticed some women on the ice and I proceeded over to help them out." The jury could have found plaintiff knew the ladies were on ice when he was 25–30 feet away and could not find he did not know of the ice until he was on it. There was no claim he was unable to stop. The jury could have found he knew of the danger and voluntarily went to the aid of the women.

"Neither can it be said he had an available alternate safer means by which to effectively carry out his rescue mission, time to deliberate upon the problem presented and effect a calculated choice, or that the danger posed was out of proportion to its intended purpose." I do not believe it proper to reach this conclusion as a matter of law. The jury might well have found the danger was not so great that plaintiff was called upon to act in great haste and that he could have taken other effective measures which were safer than his chosen action.

I believe the defendant was entitled to have the jury advised of the law on the assumption of risk, particularly in view of the fact that plaintiff was given the benefit of an instruction on rescue.

III. I also seriously question the propriety of the rescue instruction under these facts. I do not believe they presented the "imminent danger" to persons and property contemplated by the rescue doctrine. The cited cases are not factually similar and involve much more urgent situations than that presented here. However, defendant did not take exception to the rescue instruction and it is the law of case. I believe we should make it clear we are not deciding whether these facts called for the rescue instruction.

LARSON and SNELL, JJ., join in this dissent.